**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Plaintiff,**

v.

**John O. NIELSEN, D.M.D., individually and on behalf of all other persons who are similarly situated, Defendant.**

**Kenneth O. FRIDAY and George R. Bolling, Individually and on behalf of all other persons who are similarly situated, Intervenors,**

v.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Counter–Defendant.**

**Civil Action No. CV–94–L–1265–S.**

United States District Court, N.D. Alabama, Southern Division.

Jan. 31, 1996.

cations that the PACU welcomed pregnancy among employees and gladly participated in baby showers.

Edward S. Allen, Cavender C. Kimble, Leigh Anne Hodge, Balch & Bingham, Birmingham, AL, for Blue Cross and Blue Shield of Alabama, Inc.

William M. Slaughter, James C. Huckaby, Jr., R. Scott Williams, Haskell Slaughter Young & Johnston, Birmingham, AL, Jeffery H. Long, James H. Evans, Attorney General, Office of the Attorney General, Montgomery, AL, for John O. Nielsen, D.M.D., Kenneth O. Friday, George R. Bolling.

James S. Christie, Jr., Bradley Arant Rose & White, Birmingham, AL, for Complete Health, Inc.

Mary Kay Kelley, Mestre & Kelley, Birmingham, AL, for Samuel W. Sullivan, M.D.

## MEMORANDUM OPINION

LYNNE, Senior District Judge.

This action came to be heard on Blue Cross and Blue Shield of Alabama's motion for partial summary judgment on Counts I and II of its complaint for declaratory judgment and its motion to dismiss, or in the alternative, for summary judgment on the intervenors' complaint. Blue Cross and Blue Shield of Alabama ("Blue Cross") filed this action on May 25, 1994, against John O. Nielsen, individually and as a representative of all other similarly situated persons, seeking a declaration that Alabama Act No. 94–638, Ala.Code § 27–1–19 (Supp.1995) (the "Assignment Act") is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"); that Blue Cross is not subject to the Assignment Act pursuant to Ala. Code §§ 10–4–115 (1986) and 27–1–4 (1986); and that the Assignment Act is invalid as repugnant to the Constitution of the United States and the Alabama Constitution of 1901. Nielsen filed his answer on July 5, 1994, generally denying the allegations in the complaint and asserting affirmative defenses.

On November 16, 1994, this Court granted Kenneth O. Friday's and George R. Bolling's motion to intervene on behalf of themselves as defendants, individually and as class representatives. Friday and Bolling answered, incorporating by reference the answer previously filed by Nielsen. Friday and Bolling also asserted a counterclaim, alleging that Blue Cross was in violation of the Dental Care Services Act, Ala.Code §§ 27–19A–1 to –11 (1986) (the "Dental Act") and the Pharmaceutical Insurance Coverage Act, Ala. Code §§ 27–45–1 to –9 (Supp.1995) (the "Pharmacy Act"), and seeking injunctive relief.

Upon joint stipulation of the parties, and pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, this court ordered certification of the following defendant classes solely for the resolution of threshold issues raised in Blue Cross's motions: (1) all health care providers who have claimed or may claim in the future, rights under the Assignment Act; (2) the intervenor class composed of all dentists who have claimed or may claim in the future, rights under the Dental Act; and (3) the intervenor class composed of all pharmacists who have claimed or may claim in the future, rights under the Pharmacy Act (collectively the "Providers"). The threshold issues before the court on Blue Cross's motions are: (1) whether ERISA preempts the Assignment Act, the Dental Act, and the Pharmacy Act; and (2) whether Ala.Code §§ 10–4–115 and 27–1–4(2) exempt Blue Cross from compliance with the Assignment Act, the Dental Act, and the Pharmacy Act. Blue Cross's motions were presented to the court upon these stipulated threshold issues, the plead-

ings, and the parties' stipulated statement of facts.

This court concludes that (1) the Assignment Act, the Dental Act, and the Pharmacy Act are preempted by ERISA, and (2) Blue Cross is not subject to these Acts pursuant to state law. Blue Cross is entitled to partial summary judgment as a matter of law on Counts I and II of its complaint and the intervenors' complaint in intervention.

## BACKGROUND

At issue before this court are the following acts:

### The Assignment Act

The Assignment Act, Ala.Code § 27–1–19 (Supp.1995), was passed and signed into law during the 1994 Regular Session of the Alabama Legislature. The Assignment Act generally prescribes time limits by which claims submitted to insurers and other payors must be adjudicated and requires that assignment of benefits to non-contracting providers be honored and paid at the same rate as contracting providers, notwithstanding any terms of health benefit contracts to the contrary. Ala.Code § 27–1–19 (Supp.1995).

### The Dental Act

The Dental Act, Ala.Code §§ 27–19A–1 to –11 (1986), generally prohibits payors from denying any dentist's request to be a contracting provider for any reason so long as the dentist is practicing within the scope of his or her license, from limiting the patient's selection of dentist, and from reviewing the quality or utilization of any service performed by a dentist. Ala.Code § 27–19A–3. The Dental Act also mandates that certain terms be included in insurance policies and employee benefit plans, Ala.Code § 27–19A–4, declares void any provisions of such plans that are inconsistent with the Act, Ala.Code § 27–19A–5, and criminalizes willful violations of the Act, Ala.Code § 27–19A–11.

### The Pharmacy Act

The Pharmacy Act, Ala.Code §§ 27–45–1 to –9 (Supp.1995), is virtually identical to the Dental Act. Both acts take their definition of "employee benefit plan" directly from ERISA's definition of "employee welfare benefit plan." Compare Ala.Code §§ 27–19A–2(8) (1986) and 27–45–2(8) (Supp.1995) with 29 U.S.C. § 1002(1) (West 1985 and Supp.1995). The Pharmacy Act prohibits any payor, including an employee benefit plan, from denying for any reason a pharmacy's request to become a contracting provider, and from limiting the pharmacies which a covered person may use in order to purchase drugs covered by the plan. Ala.Code § 27–45–3. Like the Dental Act, the Pharmacy Act declares void all terms of employee benefit plans inconsistent with the Act, Ala.Code § 27–45–4, and criminalizes willful violations of the Act, Ala.Code § 27–45–9.

## FACTS [1]

1. Blue Cross is an Alabama not-for-profit corporation organized and existing under Ala.Code §§ 10–4–100 to –115 (1994) to provide health care service plans, under which health care benefits are furnished to the members of the public who become subscribers. Pursuant to this enabling legislation, Blue Cross enters into individual and group contracts to provide health benefits to subscribers and also enters into contracts with various health care providers for the provision of health care services to subscribers.[2]

2. Defendant John O. Nielsen is a licensed dentist practicing in Alabama. He represents a class certified by this court composed of all health care providers who have claimed or may claim in the future, rights under the Assignment Act.

3. Intervenor Kenneth O. Friday is a licensed dentist practicing in Alabama. He represents a class certified by this court composed of all dentists who have claimed or

---

1. The parties stipulated to the statement of facts solely for the purposes of deciding the limited issues for which this court has entered class certification and which are before the court on Blue Cross's motions.

2. The court notes that the Enabling Legislation gives Blue Cross and similar corporations the authority to select the class of services and benefits it will offer, the persons or class of persons it will cover, and the health care facilities and providers which may render covered services. Ala.Code § 10–4–106 (1994).

may claim in the future, rights under the Dental Care Services Act.

4. Intervenor George R. Bolling is a licensed pharmacist practicing in Alabama. He represents a class certified by this court composed of all pharmacists who have claimed or may claim in the future, rights under the Pharmaceutical Insurance Coverage Act.

5. Nielsen, Friday and Bolling and the class members they represent have provided and may in the future provide health care services to Blue Cross subscribers, including subscribers who are covered by ERISA-governed employee welfare benefit plans.

6. The health care service plans established by Blue Cross as specified in its enabling legislation consist of (1) arrangements with subscribers and groups of subscribers to receive health benefits under a plan, and (2) arrangements with health care providers to furnish services to Blue Cross subscribers and to reimburse those services.

7. Blue Cross provides health benefits to subscribers through health benefit plans with employers, associations, and individuals. A portion of the group health benefit plans that Blue Cross insures and administers are employee welfare benefit plans governed by ERISA. To the extent it provides claims administration to these employee welfare benefit plans, Blue Cross functions as a fiduciary, as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1002(21)(A). Blue Cross enters into network contracts with participating health care providers including, but not limited to, hospitals, out-patient treatment facilities, physicians, dentists, podiatrists, home health agencies, pharmacies and others by entering network contracts with the providers.

8. Blue Cross includes clauses in its individual and group health benefit plans that (1) recognize that if a claim is received from a network provider for services to a subscriber that has network benefits, Blue Cross's network contracts require it to pay benefits directly to its contracting provider, and (2) on all other claims Blue Cross may choose at its option whether to pay the subscriber or

the provider. In addition to requiring direct payment to the provider, the network contracts prescribe the rate of payment and the period of time within which claims will be paid.

9. The individual and group health benefit contracts that provide network benefits to subscribers do so expressly and specifically reference the network arrangement(s).

## DISCUSSION

### I. ERISA Preemption

**A. The Acts "relate to" ERISA governed plans.**

■ Blue Cross contends that the Assignment Act, the Dental Act, and the Pharmacy Act (collectively "the Acts") are preempted by ERISA and therefore do not apply to ERISA-governed group health benefit plans. Section 514 of ERISA, 29 U.S.C. § 1144(a), preempts all state laws that "relate to" any employee benefit plan:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan describe in section 1003(a) of this title and not exempt under 1000(b) of this title.

29 U.S.C. § 1144(a) (emphasis added). The Providers concede, and this court concludes, that all three Acts "relate to" ERISA plans.

■ The Dental and Pharmacy Acts expressly refer to employee welfare benefit plans. This express reference, without more, suffices to trigger preemption. *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 128–30, 113 S.Ct. 580, 583, 121 L.Ed.2d 513, 520 (1992). The Assignment Act does not use the term "employee welfare benefit plan," however it does expressly apply to "any employer sponsored health benefit company providing health ... insurance coverage." Ala.Code § 27–1–19(a). In addition, subsection (e) of the Assignment Act expressly regulates what benefit plans issued by "insurer[s] ... [and] other third party payor[s]" can and cannot say about assignments. Ala.Code § 27–1–19(e). The

reference to all other third party payors encompasses self-funded ERISA plans thereby satisfying the "relates to" requirement of ERISA's preemption clause.[3]

## B. The Saving Clause Analysis.

Because the Acts "relate to" ERISA plans they are preempted unless they fall within the narrow terms of ERISA's saving clause. ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(A), exempts from ERISA's broad preemptive sweep laws regulating insurance, banking, or securities. The United States Supreme Court has explained the relationship between the preemption clause and the saving clause as follows:

> If a state law "relate[s] to ... employee benefit plan[s]," it is preempted.... The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance."

*Pilot Life v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The Providers argue that although the Acts relate to ERISA plans, they also regulate insurance and thus escape preemption by operation of ERISA's saving clause. Therefore, this court must determine whether the Acts regulate the business of insurance and are saved from preemption.

■ The United States Supreme Court adopted a two-step analysis of the saving clause in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court subsequently affirmed the *Metropolitan Life* analysis in *Pilot Life*, but "with a clear intent to create a narrower scope for the saving clause in light of the broad sweep of the preemption provision." *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 569 (11th Cir.1994), *cert. denied*, —— U.S.——, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994). The first step is to determine whether under a "common-sense view"

the state law regulates insurance. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553. Second, the state law must regulate the "business of insurance" as that term is defined under the McCarran–Ferguson Act. *Id.* A state law must satisfy both steps in the analysis to be saved from preemption. *Anschultz v. Connecticut Gen. Life Ins. Co.*, 850 F.2d 1467, 1468 (11th Cir.1988).

### 1. The Common–Sense View.

■ The first step of the saving clause analysis, the "common-sense view" of the term "regulates insurance," requires that "in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554. A law is not "specifically directed" toward the insurance industry merely because it is generally identified with that industry. *Id.; see also Jefferson Pilot*, 14 F.3d at 569 (holding that notice statute regulated insurance within the common-sense view because it "expressly target[ed] the insurance industry") (quoting *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554). A common-sense inquiry of the three Acts at issue reveals that they are not directed specifically toward the insurance industry. First, the Assignment Act is not limited to the insurance industry. By its express terms it affects "[a]ll persons, firms, corporations, associations, health maintenance organizations, health insurance service, or preferred provider organizations, non-profit health service organizations, and any employer sponsored health benefit company," Ala.Code § 27–1–19(a), as well as any "company or agency," Ala.Code § 27–1–19(d), and "any other third party payor," Ala.Code § 27–1–19(e), which includes self-funded employee welfare benefit plans. The Assignment Act's effect, therefore, is not limited to the insurance industry. Rather its broad sweep covers any and every

---

**3.** This court's conclusion that the Assignment Act relates to ERISA plans is not affected by the United States Supreme Court's recent decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). There, the Court found that a statutory surcharge on hospital rates did not "relate to" ERISA plans in the absence of an express reference to such

plans and where the only effect on ERISA plans was an indirect, economic one. In this case, all three of the Acts expressly reference ERISA plans, which the Court in *Travelers* readily readily recognized would warrant preemption. *Travelers*, 514 U.S. at ——, 115 S.Ct. at 1677, 131 L.Ed.2d at 705 (citing *Greater Washington Bd. of Trade* ).

conceivable person or entity that might be responsible for paying health benefits, including ERISA governed plans. The Dental Act and Pharmacy Act by their express terms apply to "health insurance and employee benefit plans." Ala.Code §§ 27–19A–1 and 27–45–1. Like the Assignment Act, their effect is not expressly limited to the insurance industry. By their express terms, in addition to insurers, they are applicable to all employee benefit plans, which include self-funded plans and other plans that are not financed with insurance contracts.[4]

All three Acts fail the common-sense view of regulates insurance. *See Hayden v. Blue Cross and Blue Shield of Alabama,* 843 F.Supp. 1427, 1434 (M.D.Ala.1994) (holding that an analytically indistinguishable statute failed the common-sense view). Nevertheless, even assuming *arguendo* that the Acts pass the common-sense view, this court concludes that the Acts fail to meet the McCarran–Ferguson criteria.

### 2. The McCarran–Ferguson Criteria.

 Under the McCarran–Ferguson "business of insurance" test, this court must consider three criteria in determining whether the Acts regulate insurance:

> *[F]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited solely to entities within the insurance industry.

4. The Providers' reliance on *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), for their argument that the Acts meet the common-sense test is misplaced. The United States Supreme Court, in *FMC,* addressed a Pennsylvania anti-subrogation statute. The United States Court of Appeals for the Third Circuit, focusing its holding on ERISA's deemer clause, concluded that the statute prohibited the FMC Salaried Health Care Plan, a self-funded plan, from exercising its subrogation rights. *FMC,* 498 U.S. at 56, 111 S.Ct. at 406. The United States Supreme Court reversed and remanded the case on the basis of its construction of the deemer clause. The Court first concluded that ERISA preempted the statute because the statute expressly referenced and had a connection with ERISA-governed plans. *Id.* at 59, 111 S.Ct. at

*Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553, (citation omitted) (emphasis in original). The court must answer yes to all three criteria, in addition to answering yes to the common-sense view test before a state law can be considered to regulate the business of insurance within the meaning of ERISA's saving clause. *Anschultz,* 850 F.2d at 1468. All three Acts fail to satisfy even one, much less all three, of these criteria.

### a. The Acts do not spread the risk.

None of these Acts mandate benefits or expand the services covered by the terms of the applicable plan or contract. Hence, they do not spread risk as that concept is defined by the Eleventh Circuit Court of Appeals. "[T]he risk-spreading principle concerns the nature of the coverage of the policy—in other words, the risks of injury that the insurance company will bear for the insured." *Jefferson Pilot,* 14 F.3d at 569 (citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 130, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)). The transfer of risk from the insured to the insurer "is complete at the time the contract is entered." *Jefferson Pilot,* 14 F.3d at 569 (citations omitted).

In *Jefferson Pilot,* the court held that a Georgia statute requiring an insurer to give prior notice of cancellation did not fall within the saving clause because the statute had no effect on the initial "apportionment of risks, i.e., what medical costs are covered, that the parties made upon entering the contract." *Id.* at 570. Rather, the court reasoned, "[t]he statute ... merely attempts to minimize the risk of noncoverage to persons

408. The Court, noting that the parties did not dispute the issue, stated in *dicta* that the statute fell within ERISA's saving clause. *Id.* at 60–61, 111 S.Ct. at 408–09. The Court's saving clause discussion covers only a single paragraph and contains no analysis. *Id.* The Court then spent the remaining four pages of the opinion analyzing ERISA's deemer clause. This court will not disregard the teachings of the United States Supreme Court in *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554, and the judicial constraints imposed upon this court by the Eleventh Circuit in *Jefferson Pilot,* 14 F.3d at 569, that a state law must be specifically directed toward the insurance industry to meet the common-sense view based on one paragraph of *dicta* in the *FMC* opinion.

whose policies lapse." *Id.* at 569 n. 9 (citation omitted).

Like the Georgia statute at issue in *Jefferson Pilot,* the Assignment Act, the Dental Act, and the Pharmacy Act do not affect the initial apportionment of risk at the inception of the contract. The Acts do not purport to mandate what types of medical costs are covered or who is to bear the risk for those costs. Instead, the Acts address only who must receive payment for covered services under a subscriber's health plan *after* the risk already has been spread.

### b. The Acts do not affect the relationship between the insurer and the insured.

The second McCarran–Ferguson criterion requires that the Acts define the terms of "the policy relationship between the insurer and the insured." *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554. The insurer/insured relationship is defined by the terms of the contract between them. *Jefferson Pilot,* 14 F.3d at 570. The Assignment Act defines the terms of a relationship only between Blue Cross and non-network providers, not Blue Cross and its subscribers. Similarly, the Dental Act and the Pharmacy Act define only the relationship between Blue Cross and providers of dental and pharmaceutical services, not Blue Cross and its subscribers. Not one of the Acts adds substantive coverage terms to the contractual relationship between Blue Cross and its subscribers; all three merely direct how the plans are to be administered.

The Eleventh Circuit Court of Appeals, in *Jefferson Pilot,* reached a similar conclusion. In concluding that the Georgia notice law failed the second criterion of the McCarran–Ferguson analysis, the court reasoned that the statute "regulates the administration of policies, not their substantive terms." *Id.* at 570. The court explained that "the kind of notice that is required in order to terminate coverage is a matter that lies at the core of plan administration" and does not affect the substantive terms of insurance policies. *Id.* Consequently, the court held that the Georgia notice statute failed the second criterion of the McCarran–Ferguson analysis because it did not affect an integral part of the relationship between the insurer and the insured.

The Acts before this court affect the insurer/insured relationship even less than the Georgia notice statute in *Jefferson Pilot.* The Acts address only the dealings between insurer and providers, not dealings between the insurer and the insured. Like the Georgia notice statute, the Assignment Act, the Dental Act, and the Pharmacy Act affect a core plan administration function: who gets paid and when they get paid. Not one of the Acts regulates the type of benefits that Blue Cross may offer to subscribers or any other aspect of the insurer/insured relationship. The Acts fail the second criteria of the McCarran–Ferguson analysis.

### c. The Acts are not directed solely to entities in the insurance industry.

To satisfy the third criterion of the McCarran–Ferguson analysis, the Acts must be limited solely to the insurance industry. *Pilot Life,* 481 U.S. at 49, 107 S.Ct. at 1553–54; *Jefferson Pilot,* 14 F.3d at 569. It is not enough that the three Acts apply to the insurance industry and possibly others. The Acts all fail this requirement because they clearly are not limited in application to the insurance industry by their express terms. The express language in all three Acts reaches beyond insurance to include self-funded or other uninsured plans.

This court's conclusion that the Acts fail the McCarran–Ferguson test for the business of insurance is supported by the analysis of the United States Supreme Court in *Group Life & Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). In *Royal Drug,* owners of independent pharmacies brought an action against Group Health alleging that Group Health's contracts with participating pharmacists violated antitrust laws. *Royal Drug,* 440 U.S. at 207, 99 S.Ct. at 1071. Under the terms of the agreements with participating pharmacies, insureds paid to participating pharmacies a $2.00 co-pay or charge for each covered prescription. *Id.* at 214, 99 S.Ct. at 1074. Group Health, in turn, reimbursed participating pharmacies for the cost of each covered prescription under the terms of a maximum fee schedule. *Id.* The Supreme Court addressed the issue whether Group

Health's contracts with participating pharmacists constituted the business of insurance under the McCarran–Ferguson Act, thereby exempting the contracts from scrutiny under federal antitrust laws. *Id.* at 210, 99 S.Ct. at 1072.

The Court held that the Group Health's contracts with participating pharmacists failed the McCarran–Ferguson business of insurance test. First, the Court concluded that the pharmacy agreements did not involve spreading of risk because the agreements were "merely arrangements for the purchase of goods and services" by the insurer. *Id.* at 214, 99 S.Ct. at 1074. Next, the Court determined that the pharmacy agreements did not affect the relationship between the insurer and the insured, but were separate contractual arrangements between the insurer and participating pharmacies. *Id.* at 216, 99 S.Ct. at 1075.

Like the pharmacy agreements at issue in *Royal Drug,* the Acts do not spread any risk. The Acts do not affect the amount of coverage an insured will receive from an insurer, but who will be paid. In addition, the Acts do not affect the relationship between the insurer and insured, but separate relationships between insurers and providers.

The Providers' reliance on *Stuart Circle Hospital Corp. v. Aetna Health Management,* 995 F.2d 500 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 579, 126 L.Ed.2d 478 (1993), and *Blue Cross and Blue Shield of Kansas City v. Bell,* 798 F.2d 1331 (10th Cir.1986), for the proposition that the Acts at issue are saved from preemption is not persuasive. In *Stuart Circle,* the United States Court of Appeals for the Fourth Circuit held that a Virginia any-willing-provider statute was saved from preemption by ERISA's saving clause. In determining that the statute spread the risk under the McCarran–Ferguson analysis, the court reasoned that "[b]y its prohibition against unreasonable restriction of providers, the Virginia statute spreads the cost component of the policyholder's risk among all the insureds, instead of requiring the policyholder to shoulder all or part of this cost when seeking care or treatment from an excluded doctor or hospital of his or her choice." *Stuart Circle,*

995 F.2d at 503. No such cost spreading is effected by the Assignment Act. It requires that the non-contracting provider who took an assignment be paid the same benefit as would be paid a contracting provider. The Dental and Pharmacy Acts accomplish the same result by requiring that non-contracting dentists and pharmacists be offered a contract, if they request one, so they can be paid like contracting providers. None of these Acts do anything to prohibit the non-contracting provider from billing the patient for the difference in the billed charge and the amount reimbursed by the payor. Under each Act the amount to be paid by the payor is unaffected. Therefore, no risk is shifted.

In the same way, none of the Acts in question expand coverage. The services covered and the amounts reimbursed for those services are not mandated or, for that matter, affected in any way by any of the Acts. Indeed, the Acts provide only that either a non-contracting provider be allowed to receive the same amount that would be paid to a contracting provider for the same service, or be allowed to become a contracting provider. The extent or amount of coverage, therefore, is not affected by these Acts.

This court disagrees with the *Stuart Circle* court's conclusion that the PPO statute met the second McCarran–Ferguson prong because regulations governing treatment and costs are integral components of health insurance. The court reasoned there was no meaningful distinction between mandatory provider laws and the mandated benefit statute in *Metropolitan Life,* 471 U.S. at 741–42, 105 S.Ct. at 2390. *Stuart Circle,* 995 F.2d at 503–04. There is, however, a principled difference between mandated benefits laws and mandated provider laws. The Acts directly benefit those providers who avail themselves of the rights afforded by the Acts. The relationship between the provider and the patient is separate from the relationship with the provider and the payor. The Acts affect who gets paid, and that determination certainly has an effect, albeit an incidental one, on the subscriber. The Acts are not an integral part of the contractual relationship between Blue Cross and the patient/subscriber since the Acts do not affect the substan-

tive coverage terms of the contracts defining the subscriber/payor relationship.

The Providers' reliance on *Blue Cross and Blue Shield of Kansas City v. Bell*, 798 F.2d 1331 (10th Cir.1986), likewise is misplaced. In *Bell*, the court held that a Kansas statute that (1) mandated benefits for newborn coverage, and (2) mandated reimbursement for covered services provided by certain health care providers, was saved from ERISA preemption by the saving clause. *Bell*, 798 F.2d at 1336. That case did not involve any issues regarding the enforceability of assignments of benefits.

In discussing the mandated *provider* section of the statute, the *Bell* court's analysis turned on its characterization of this portion of the statute as a "freedom of choice" law. The court concluded, without citing any authority or meaningful discussion, that the mandated provider statute met the first McCarran–Ferguson criterion—risk spreading—because "[i]mplicit in the [scope of] coverage ... is the insured's choice of a deliverer of the care." *Bell*, 798 F.2d at 1335.

As to the second McCarran Ferguson criterion, the court concluded, again without discussion, that the choice of provider constituted an integral part of the policy relationship between the insurer and the insured because "[t]he freedom to choose a treating physician is inextricable from the nature of the coverage provided." *Id.* The court held that the third McCarran–Ferguson criterion was met because the statute imposes requirements on insurers that directly affect the relationship between the insurer and policyholder and is, therefore, "essential to the insurance policy itself." *Id.* (citations omitted).

The *Bell* court's analysis is contrary to the law of this circuit. Under the first McCarran–Ferguson criterion, the choice of a health care provider has nothing to do with spreading the risk of coverage. As explained by the Eleventh Circuit in *Jefferson Pilot*, spreading the risk entails "the risks of injury that the insurance company will bear for the insured." *Jefferson Pilot*, 14 F.3d at 569 (citation omitted). Taking the court's example in *Bell*, coverage for a back injury, spreading the risk entails the amount of cov-

erage that the insurer will bear for treatment of a particular injury or procedure—not who will perform the treatment. The Acts at issue in this case do not spread the risk. The coverage (which is the risk that has been spread) is the same, whether the benefits are paid to a network provider or a non-network provider under one of the Acts.

As to the second criterion, the Assignment Act does not affect a subscriber's freedom to choose a provider. In view of the statutory authority vested in Blue Cross by the Alabama Legislature in Ala.Code § 10–4–106 to select the providers whose services it will cover, subscribers covered by Blue Cross plans with network benefits are entitled to see only those providers Blue Cross designates as covered providers. The three Acts do not change this.

Finally, the Acts affect only the relationship between the insured and the provider, not the insured and the insurer. As the Eleventh Circuit has observed, the contract defines that relationship, and these statutes do not affect any of the contractual coverage obligations existing between the insurer and the insured. *See Jefferson Pilot*, 14 F.3d at 570. The Acts are not saved from preemption by ERISA's saving clause.

In summary, all three Acts are preempted by ERISA as to ERISA-governed plans and are not saved from preemption by the saving clause.

## II. Under Alabama Law the Assignment Act, The Dental Act and the Pharmacy Act Do Not Apply to Blue Cross.

Blue Cross argues that, separate and apart from ERISA's preemptive effect, it is not subject to the Acts pursuant to statutory exemptions found in Ala.Code §§ 10–4–115 (1994) and 27–1–4 (1986). The Providers contend that (1) the Acts repeal by implication the statutory exemptions given to Blue Cross under §§ 10–4–115 and 27–1–4, and (2) § 10–4–115 violates the Constitution of Alabama. For the following reasons, this Court agrees with Blue Cross and holds that, as a matter of purely state law, Blue Cross is not bound to observe and follow the Acts.

Blue Cross is not an insurance company. It is a special purpose corporation that is organized pursuant to special legislation for the purpose of establishing, maintaining, and operating a health care service plan. *Blue Cross and Blue Shield of Alabama v. Protective Life Ins. Co.*, 527 So.2d 125 (Ala.Civ.App. 1987); Ala.Code §§ 10–4–100 to –115 (the "Enabling Legislation"). Under § 10–4–106,[5] Blue Cross may offer health benefit contracts to the public, determine the eligibility for coverage under its own rules and regulations, and designate the facilities and providers that its subscribers may use for covered services. As a special purpose corporation organized under this legislation, Blue Cross is subject to two key exemptions from insurance laws that are central to this case.

### A. The Statutory Exemptions.

■ To assure and protect their special purpose and to maintain their distinctness from insurance companies, the Alabama Legislature has provided not one, but two exemptions for companies like Blue Cross from all statutes applying to insurance companies, unless those statutes are expressly made applicable through an amendment to the Enabling Legislation. First, section 10–4–115 of the Enabling Legislation provides:

No statute of this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article and amendments thereto or to any contract made by such corporation *unless expressly mentioned in this article and made applicable;* except, that such corporations shall be subject to the provi-

5. Section 10–4–106 provides in pertinent part:

. . . . .

It shall be the duty of such corporation to enter into contracts with and issue certificates to those of the public who may desire to avail themselves of the benefits of said health service plan and who, under its rules and regulations, make application and are eligible therefor. *Such contracts may provide for more than one class of services or benefits, may designate the person or persons, or the class of persons, entitled thereto, may designate the health care facilities and providers which render the services*

sions regarding annual premium tax to be paid by insurers on insurance premiums. Ala.Code § 10–4–115 (emphasis added).

In the event the exemption in the Enabling Legislation was not clear enough, the Alabama Legislature provided in the Insurance Code (Ala.Code §§ 27–1–1, et seq.) a second exemption from compliance with the Insurance Code:

This title shall not apply as to:

Nonprofit corporations for establishment of hospitalization plan under section 10–4–100, et seq., *except to the extent now or hereafter provided in such laws;* . . . .

Ala.Code § 27–1–4(2) (emphasis added). These two provisions make abundantly clear the Alabama Legislature's intent that insurance statutes are not to apply to § 10–4–100 corporations like Blue Cross, unless the Enabling Legislation is explicitly amended to make them applicable. Since the Enabling Legislation was not specifically amended to make any of these Acts applicable to Blue Cross, then Blue Cross is exempt from all of them by virtue of § 10–4–115 alone. Moreover, since all three Acts are codified in the Insurance Code, § 27–1–4(2) is singularly sufficient to exempt Blue Cross from the Acts.[6]

### B. The plain language of the Enabling Legislation controls.

The court is not persuaded by the Providers' arguments that (1) the language of Ala. Code § 10–4–115 is overreaching; therefore, application of its plain language would lead to absurd results; (2) the requirements of § 10–4–115 must yield to the Assignment Act's express reference to Blue Cross; and (3) the Enabling Legislation violates the Constitution of Alabama.

*provided for* and may specify the charge or dues required to be paid for such services or benefits. . . . (emphasis added)

6. Blue Cross argues, and this court agrees, that the presence of not one but two exemptions demonstrates the calculated, express will of the Legislature that companies like Blue Cross that provide a health service plan through contracts with providers, *see* Ala.Code §§ 10–4–100, 10–4–106, rather than through traditional indemnity insurance contracts, not be regulated under the Insurance Code.

The Providers take issue with the statutory language that "[n]o statute of this state applying to insurance companies" applies to nonprofit corporations organized under Ala. Code § 10–4–100, et seq., including Blue Cross, unless the Enabling Legislation is first amended. Ala.Code § 10–4–115. The crux of the Providers' argument is that the cited statutory language expands the reach of the Enabling Legislation beyond statutes codified in the Alabama Insurance Code, §§ 27–1–1, et seq., to other statutes that affect insurance companies indirectly, such as statutes of limitation. Simple statutory construction demonstrates the lack of merit in this argument.

▮▮▮▮ The cardinal rule of statutory construction is to "determine the intent of the legislature." *Protective Life*, 527 So.2d at 126. Legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. *Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n*, 589 So.2d 687, 689 (Ala.1991) (citations omitted). In deriving legislative intent, a court is bound to first examine the statutory language, giving the words in the statute "their natural, plain, ordinary, and commonly understood meaning.... If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." *Id.* (citations omitted). *See Town of Loxley v. Rosinton Water, Sewer and Fire Protection Authority, Inc.*, 376 So.2d 705, 706–08 (Ala.1979) (rejecting argument that literal construction of two conflicting statutes would result in "chaotic result[s]" where the statutory language was clear and any changes to the statutes must come from the legislature).

In the case *sub judice*, Ala.Code § 10–4–115 applies to all "statute[s] of this state *applying to* insurance companies ... or to any contract made by [a § 10–4–100] corporation...." (emphasis added). The natural, plain, ordinary, and commonly understood meaning of "applying to" is having some relevance or referring to. The New Shorter Oxford English Dictionary 100 (Lesley Brown ed., revised ed. 1993). The plain language of the statute requires that before a statute having some relevance to insurance companies is likewise applicable to § 10–4–100 corporations, the Enabling Legislation must first be amended. The Legislature could have provided instead that "no statute of this state expressly referring to insurance companies" or "no statute of this state codified in the Alabama Insurance Code" shall apply to nonprofit corporations organized under Ala.Code §§ 10–4–100, et seq. The language of Ala.Code § 10–4–115 is unambiguous and, therefore, controls. As Blue Cross aptly pointed out, any changes to the language—even if this court agreed with the Providers that § 10–4–115 is overreaching—must come from the Legislature, not this court.

The Assignment Act, the Dental Act, and the Pharmacy Act clearly are statutes that apply to insurance companies among others. Each Act is codified in the Insurance Code. The Assignment Act, by its express terms, obligates "provider[s] of insurance coverage," Ala.Code § 27–1–19(b), to process claims within a certain period of time and honor assignment of benefits by insureds to health care providers. The Dental and Pharmacy Acts, by their express terms, obligate "insurers" among others to allow licensed dentists and pharmacists the right to participate as a contracting provider for "health insurance polic[ies]." Ala.Code §§ 27–19A–1, et seq.; 27–45–1, et seq. Not one of the Acts, however, expressly amends the Enabling Legislation or was accompanied by such an amendment. Before the Acts could be made applicable to Blue Cross, the Enabling Legislation would have to be amended to include an *express* mention of the Acts.

This proposition has solid precedential support in both statutory and decisional law. On two occasions in the past, when the Alabama Legislature has intended to make an insurance law applicable to companies like Blue Cross, it has done so by expressly amending the Enabling Legislation. Both amendments made the premium tax applicable to § 10–4–100 corporations. *See* Acts 1969, Extraordinary Session, No. 27, p. 73; Acts 1993, No. 93–679, p. 1291 § 8.

By complying with the exemptions' requirements and expressly amending the Enabling Legislation not once but twice, the Legislature has demonstrated that it is acutely aware of how to make an insurance law applicable to Blue Cross should it so desire. The intent of the Legislature is not to make these Acts applicable to companies like Blue Cross is apparent from the absence of any amendment to the Enabling Legislation.

Likewise, this court is not persuaded by the Providers' argument that the Legislature clearly intended that the Assignment Act apply to Blue Cross because it expressly references "non-profit health service organizations," notwithstanding the fact that the Act did not amend the Enabling Legislation. That phrase is not defined in the Assignment Act and the term does not appear elsewhere in the Alabama Code. When the Legislature has intended an insurance law to apply to Blue Cross, it has amended the Enabling Legislation expressly to make it applicable. Elected officials are presumed to know the law. *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979); *Miller v. State,* 349 So.2d 129, 131 (Ala.Cr.App.1977). The court must assume that the Alabama Legislature was aware of both statutory exemptions when it enacted these three Acts and was aware that in the past when it wished to subject § 10–4–100 corporations to insurance laws, it has done so by amending the Enabling Legislation and making express references elsewhere in the Insurance Code. The absence of amendments to the Enabling Legislation concurrent with the passage of all three of these Acts is overwhelming evidence of a legislative intent that none of the Acts apply to Blue Cross and similar entities.

**C. The Assignment Act, the Dental Act and the Pharmacy Act do not impliedly repeal the exemptions in the Enabling Legislation and the Insurance Code.**

**1. The Legislature did not intend that the Acts repeal the exemption statute.**

■ Legislative intent is the crucial factor in determining whether two statutes are irreconcilable so as to require a repeal. *Ex parte Jones,* 212 Ala. 259, 102 So. 234, 235 (1924). A presumption exists against finding an implied repeal, which can only be overcome by a plain manifestation of contrary legislative intent. *See Shepherd v. Clements,* 224 Ala. 1, 141 So. 255, 256 (1931), *cert. denied,* 224 Ala. 3, 141 So. 256 (1932). "The question is one of intention which may be made to appear by the subject-matter with which the general Act is concerned, by the surrounding circumstances, by other legislation on the same subject, and the purpose to be accomplished." *Shepherd,* 141 So. at 256.

■ The most reliable indicator that no repeal was intended is the fact that not one of the Acts were accompanied by an amendment to the Enabling Legislation. If the Legislature had intended that the Acts surmount the general exemptions, it would have amended the Enabling Legislation as it did on two prior occasions with regard to the premium tax. It is difficult to imagine a clearer evocation of Legislative intent that the exemption provision not be repealed by implication. The Legislature did not intend to repeal the exemption statutes with the Assignment Act, the Dental Act, and the Pharmacy Act.

**2. The Acts, being general statutes, by definition, do not irreconcilably conflict with a more specific exemption statutes.**

■ A prior Act is not in irreconcilable conflict and is not repealed by implication, unless provisions of a subsequent Act are directly repugnant to the former. *Ex parte Jones,* 102 So. at 235. These statutes are not in irreconcilable conflict or directly repugnant to each other. As a threshold matter, they do not even address the same subject matter. The exemption statutes limit the regulatory environment in which Blue Cross must operate. They make no mention of assignment of benefits, dentists, or pharmacists.

The exemption statutes can peacefully coexist with the Acts. These statutes can coexist by merely exempting Blue Cross and any other § 10–4–100 corporations, pursuant

to the statutory exemptions from these Acts. This result is the clear intent of § 27–1–4(2) that the entirety of the Insurance Code, of which all of these Acts are a part, *shall not apply* to § 10–4–100 corporations. *See Hayden,* 843 F.Supp. at 1438 (holding that analytically indistinguishable statute did not conflict with § 10–4–100).

### D. The Enabling Legislation Does Not Violate the Alabama Constitution.

The Providers assert two basic arguments in support of their contention that the Enabling Legislation violates the Alabama Constitution. First, the Providers argue that the Enabling Legislation's requirement that an insurance statute must amend § 10–4–115 before it applies to Blue Cross imposes a substantive requirement for the enactment of the new statute that conflicts with the legislative procedure authorized by the Alabama Constitution. Second, the Provider's contend that the Enabling Legislation violates Section 108 of the Alabama Constitution. For the following reasons, this Court concludes that the Enabling Legislation does not violate the Constitution of Alabama.

The Alabama Supreme Court has set forth the standard of review in determining whether a statute is unconstitutional as follows:

"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond the reasonable doubt that it is violative of a fundamental law."

*City of Birmingham v. Graffeo,* 551 So.2d 357, 363 (Ala.1989) (citations omitted). The Providers have not overcome the strong presumption of validity and demonstrated beyond a reasonable doubt that Ala.Code § 10–4–115 violates the Constitution of Alabama.

■ As an initial matter Blue Cross argues, and this court agrees, that the Providers lack standing to raise their constitutional challenge. Even the Providers do not dispute this contention. It is well settled that "court[s] will not rule upon a constitutional question unless some specific right of [the person challenging the statute] is directly involved." *Matthews v. Shelby County Comm'n,* 615 So.2d 605, 608 (Ala.Civ.App. 1992) (citing *Smith v. Potts,* 293 Ala. 419, 304 So.2d 578 (1974)). "A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights...." *Bland v. State,* 395 So.2d 164, 166 (Ala.Crim.App.1981) (citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)).

The Providers are challenging the constitutionality of the Enabling Legislation, which exempts Blue Cross from the mandate of statutes that are directed towards "insurance companies." Ala.Code § 10–4–115. The Providers are not insurance companies. The Enabling Legislation does not impact directly on their rights as health care providers, but instead on the rights of insurance companies who must compete with Blue Cross and companies like it. The United States Supreme Court has made clear that a suing party may not premise his claim on the legal rights of others. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see also Marshall County Concerned Citizens v. City of Guntersville,* 598 So.2d 1331, 1333 (Ala.1992). The Providers, therefore, have no standing to challenge the constitutionality of the Enabling Legislation. This court, however, will discuss the merits of the Providers' constitutional arguments.

1. **Section 10–4–115 does not impose a substantive requirement for the enactment of a new statute that conflicts with the legislative procedure authorized by the Alabama Constitution.**

■ The Providers argue that Ala.Code § 10–4–115 is unconstitutional because it requires an amendment to the Enabling Legislation before a statute applying to insurance companies is likewise applicable to non-profit corporations organized under §§ 10–4–100, et seq. The procedural requirements of § 10–4–115, however, are clearly within the

constitutional limitations for the enactment of legislation.

■ The Enabling Act does not attempt to bypass or add anything to the constitutional requirements for the passage of legislation. *See Tayloe v. Davis*, 212 Ala. 282, 102 So. 433, 435 (1924) (setting out constitutional requirements for enacting legislation). For an amendment to an existing statute to be valid it need only be passed in accordance with the same constitutional requirements as were necessary to enact the original statute. *Opinion of the Justices*, 381 So.2d 183, 185 (Ala.1980) (citing *Tayloe*, 102 So. at 435).

The Providers' reliance on *Tayloe* for the proposition that Ala.Code § 10–4–115 impermissibly adds a substantive step to the enactment of any statute that the Legislature desires to apply to companies like Blue Cross is misplaced. At issue in *Tayloe* was one section of a budget act that required a two-thirds vote of both houses before the bill could be amended, contrary to the constitutional limitation that only a majority vote of both houses was required. *Tayloe*, 102 So. at 434–35. The court held that the section of the budget law at issue was void due to its conflict with the constitutional requirements for the enactment of legislation. *Id.* at 436. The Enabling Legislation poses no such conflict with the Alabama Constitution.

### 2. Section 10–4–115 does not violate Section 108 of the Alabama Constitution.

Section 108 of the Alabama Constitution provides:

> The operation of a general law shall not be suspended for the benefit of any individual, private corporation, or association; nor shall any individual, private corporation or association be exempted from the operation of any general law except as in this article otherwise provided.

■ The Providers argue that Ala.Code § 10–4–115 impermissibly affords Blue Cross a greater immunity or exemption from legislation affecting insurance companies than that which is constitutionally available to all insurance companies. The Providers' argument fails because Blue Cross is not an insurance company—it is a special purpose corporation, organized under § 10–4–100, et seq., for the specific and limited purpose of maintaining a health care service plan for subscribers. *Blue Cross and Blue Shield of Alabama v. Protective Life Ins. Co.*, 527 So.2d 125, 128 (Ala.Civ.App.1987). Additionally, the Providers' argument fails because Ala.Code § 10–4–115 is constitutional as it is a general exemption and applies equally to a class of all such non-stock corporations, not just Blue Cross. *See Beauvoir Club v. State*, 148 Ala. 643, 42 So. 1040, 1043 (1907) (To be valid, an exemption law "should be general in its operation, at least to the class or locality to which it applies.").

Ala.Code § 10–4–115 meets this constitutional mandate. By its express terms, it is applicable to "*[a]ny* nonstock corporation organized not for profit for the purpose of establishing, maintaining and operating a health care service plan under which health services are furnished to such of the public who become subscribers to such plan." Ala. Code § 10–4–100 (emphasis added). The Enabling Legislation does not single Blue Cross out for any special privilege that is not equally available to all members of its class. It is of no consequence whether any other non-profit corporation covered by Ala.Code §§ 10–4–100 to –115 currently exists. The Enabling Legislation, therefore, does not violate Section 108 of the Constitution of Alabama.

For the above-stated reasons, Blue Cross is entitled to summary judgment on Counts I and II of its complaint and the intervenors' complaint in intervention.