**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 95-30481

CIGNA HEALTHPLAN OF LOUISIANA, INC.; CONNECTICUT
GENERAL LIFE INSURANCE CO.,

                                        Plaintiffs-Appellees,

versus

STATE OF LOUISIANA, Ex Rel. RICHARD P. IEYOUB, Attorney General,

                                        Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana

April 30, 1996

Before REYNALDO G. GARZA, WIENER, and STEWART, Circuit Judges.

WIENER, Circuit Judge:

    Plaintiffs-Appellees CIGNA Healthplan of Louisiana (CIGNA) and
Connecticut General Life Insurance Company (CGLIC) filed suit
against Defendant-Appellant the State of Louisiana, ex rel. Richard
P. Ieyoub, Attorney General[1] (Ieyoub), seeking <u>inter alia</u> (1) a

    [1]In their complaint, CIGNA and CGLIC name Ieyoub, acting in
his official capacity, as the defendant in this action.
Nevertheless, Ieyoub contends that the Eleventh Amendment bars the
suit. The district court rejected this argument out of hand,
characterizing it as "patently without merit." We agree with the
court's assessment of this issue, as it is well established that
the federal courts have jurisdiction to hear suits against state
officials where, as here, the plaintiffs seek only prospective
declaratory or injunctive relief to prevent a continuing violation

declaratory judgment holding that Louisiana's Any Willing Provider statute[2] is preempted by the Employee Retirement Income Security Act (ERISA)[3]; and (2) an injunction prohibiting the commencement of any action against them for alleged violations of the Any Willing Provider statute.[4]  The district court granted summary judgment

---

of federal law.  See, e.g., Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983); Saltz v. Tenn. Dep't of Employment Sec., 976 F.2d 966 (5th Cir. 1992); Brennan v. Stewart, 834 F.2d 1248 (5th Cir. 1988).

Our conclusion is unaffected by the Supreme Court's recent decision in Seminole Tribe of Florida v. Florida, 1996 W.L. 134309 (U.S. May 27, 1996) (5-4 decision).  There, a sharply divided court held that suits against state officials for prospective injunctive relief are barred "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right."  Id. at *16.  Here, CIGNA and CGLIC do not seek to enforce against Louisiana any cause of action created by Congress; and no congressionally mandated remedial scheme is implicated.  Instead, CIGNA and CGLIC seek only to prevent a Louisiana official from violating the Supremacy Clause of the United States Constitution by encroaching on legal terrain that Congress has properly deemed preempted.  Accordingly, the Court's holding in Seminole does not apply to the circumstances of this case; and we affirm the district court's determination that the Eleventh Amendment does not proscribe this suit.

The district court also rejected Ieyoub's contention that this action is barred by the Anti-Injunction Act.  As the Anti-Injunction Act prohibits a federal court from staying a pending state court proceeding, and as CIGNA and CGLIC seek no such stay, we affirm the district court's holding on this issue.  See, e.g., B & A Pipeline Co. v. Dorey, 904 F.2d 996, 1001 n.15 (5th Cir. 1990) (citing Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965)).

[2]See LA. REV. STAT. ANN. § 40:2202(5)(c) (West 1992) ("No licensed provider, other than a hospital, who agrees to the terms and conditions of the preferred provider contract shall be denied the right to become a preferred provider to offer health services within the limits of his license.").

[3]See 29 U.S.C.S. §§ 1001 et seq. (Law. Co-op 1990 & Supp. 1995).

[4]CIGNA and CGLIC also sought declaratory and injunctive relief on the theory that the Any Willing Provider statute violates the Due Process clause of the United States Constitution.  The district court dismissed the due process claim for failure to state a claim. CIGNA and CGLIC do not challenge this ruling on appeal.

declaring that ERISA preempts the Any Willing Provider statute insofar as it applies to third party administrators and health care plans that provide services to ERISA-qualified benefit plans, and issued an injunction barring enforcement of the statute against CIGNA and CGLIC. Concluding that the Any Willing Provider statute relates to employee benefit plans within the meaning of ERISA's preemption clause,[5] and that the statute is not exempted from preemption by ERISA's insurance savings clause,[6] we affirm.

I.

FACTS AND PROCEEDINGS

A.    FACTS

1.   The Any Willing Provider Statute

In 1984, in an attempt to reduce health care costs without jeopardizing the quality of care received by patients,[7] the Louisiana legislature enacted the Health Care Cost Control Act (the Act).[8] The Act specifically authorizes the formation of preferred provider organizations (PPOs), which are defined as "contractual . . . agreements between a provider or providers and a group purchaser or purchasers to provide for alternative rates of payment . . . ."[9] The definitional section of the Act contains a definition of "group purchaser," then follows the definition with an illustrative list of some of the types of entities that may be

---

[5]See 29 U.S.C.S. § 1144(a) (Law. Co-op 1990).

[6]See 29 U.S.C.S. § 1144(b)(2)(A) (Law. Co-op 1990) (providing that, with limitations irrelevant to the instant appeal, "nothing in this title shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities").

[7]See LA. REV. STAT. ANN. § 40:2201(A) (West 1992).

[8]See LA. REV. STAT. ANN. §§ 40:2201 et seq. (West 1992 & Supp. 1996).

[9]LA. REV. STAT. ANN. § 40:2202(5) (West 1992).

included in that category.[10]   According to the Act, "group purchasers" may include "[e]ntities which contract for the benefit of their insured, employees, or members"[11]; and "[e]ntities which serve as brokers for the formation of [contracts with providers], including health care financiers, third party administrators, . . . or other intermediaries."[12]

The Any Willing Provider statute, which is incorporated as § 2202(5)(c) of the Act, mandates that "[n]o licensed provider . . . who agrees to the terms and conditions of the preferred provider contract shall be denied the right to become a preferred provider."[13]   According to an advisory opinion issued by the Louisiana Attorney General's office in February 1993, the arbitrary exclusion from a PPO of a licensed physician who is "willing and able to accede to the terms and conditions of the preferred provider contract" constitutes both a violation of the Any Willing Provider statute and an unfair trade practice under Louisiana law.[14]

2.   The Parties

---

[10]Section 2202(3) of the Act reads:
"Group purchaser" shall mean an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization.  "Group purchaser" may include:
(a)  Entities which contract for the benefit of their insured [sic], employees, or members such as insurers, self-funded organizations, Taft-Hartley trusts, or employers who establish or participate in self funded trusts or programs.
(b)  Entities which serve as brokers for the formation of such contracts, including health care financiers, third party administrators, providers, or other intermediaries.
See La. Rev. Stat. Ann. § 40:2202(3) (West 1992).

[11]La. Rev. Stat. Ann. § 40:2202(3)(a).

[12]La. Rev. Stat. Ann. § 40:2202(3)(b).

[13]La. Rev. Stat. Ann. § 40:2202(5)(c).

[14]See Op. Att'y Gen. No. 92-824 (Feb. 8, 1993).

4

Both CIGNA and CGLIC constitute "group purchasers" under the terms of the Act. CIGNA is a licensed health maintenance organization (HMO) that provides prepaid health care coverage to enrolled subscribers — including the sponsors of ERISA-qualified employee benefit plans — by contracting with selected physicians, hospitals, and other health care suppliers (collectively, providers). The chosen providers agree to comply with CIGNA's quality control requirements and to offer health care services to CIGNA's subscribers at a discounted rate.

In Louisiana, CIGNA's provider network is marketed by CGLIC, a licensed health insurer. CGLIC also contracts with CIGNA for the right to use the provider network in conjunction with the insured and self-funded health benefit plans that CGLIC offers to, and administers for, its clients. Like CIGNA's subscribers, CGLIC's clients include the sponsors of ERISA-qualified employee welfare benefit plans.

3. <u>Impact of the Any Willing Provider Statute</u>

In 1994, CIGNA notified one of the physicians on its provider network, Dr. Ronald Sylvest, that his contract was being terminated. Dr. Sylvest sued CIGNA, alleging that his termination violated the Any Willing Provider statute. After a temporary restraining order was issued against CIGNA, the parties reached a settlement; and the suit was dismissed.

Since the dismissal of the Sylvest suit, CIGNA has received statutory notice from the Attorney General's office that a formal complaint has been filed by a doctor charging that CIGNA violated the Any Willing Provider statute by rejecting his application to its provider panel. Moreover, CIGNA has received, and would like to reject, applications from a number of physicians seeking inclusion in its network of providers.

B. PROCEEDINGS

In an effort to free themselves from the threat of suit for

5

the violation of the Any Willing Provider statute, CIGNA and CGLIC brought this action against Ieyoub in federal district court, seeking inter alia (1) a declaratory judgment holding that the Any Willing Provider statute is preempted by ERISA; and (2) an injunction prohibiting the commencement of any action against them for alleged violations of the Any Willing Provider statute. The district court granted summary judgment declaring that ERISA preempts the Any Willing Provider Statute insofar as it relates to third party administrators and health care plans that provide services to ERISA-qualified benefit plans, and issued an injunction barring Ieyoub from enforcing the statute against CIGNA and CGLIC. Ieyoub timely appealed.

II.

ANALYSIS

A.   STANDARD OF REVIEW

When reviewing a grant of summary judgment, we view the facts and inferences in the light most favorable to the non-moving party[15]; and we apply the same standards as those governing the trial court in its determination.[16]   Summary judgment must be granted if a court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17]

B.   ERISA PREEMPTION[18]

_____

[15]See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 266 (5th Cir. 1995).

[16]See Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1065 (5th Cir. 1995), cert. denied, 116 S. Ct. 704 (1996).

[17]FED. R. CIV. P. 56(c).

[18]Ieyoub contends that we may not address the substantive issues of this case, as CIGNA and CGLIC lack standing and no active justiciable controversy exists.  We agree with the district court's conclusion that these arguments are meritless, and we approve the

1.    <u>Preemption Doctrine</u>

The first question we must address is whether the Any Willing Provider statute is preempted pursuant to § 514(a) of ERISA. Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that is covered by the federal statute.[19]  Courts have interpreted this preemption clause broadly, observing that its deliberatively expansive language was designed "to establish . . . plan regulation as exclusively a federal concern."[20]

The Supreme Court has given the phrase "relate to" a "broad common-sense meaning."[21]  A state law relates to an ERISA plan "in the normal sense of the phrase if it has <u>connection with or reference to</u> such a plan."[22]  A state law can relate to an ERISA plan even if that law was not specifically designed to affect such plans, and even if its effect is only indirect.[23]  If a state law does not expressly concern employee benefit plans, it will still be preempted insofar as it applies to benefit plans in particular cases.[24]  Of particular significance to our analysis today is the

---

reasoning set forth in the court's opinion.  <u>See</u> <u>CIGNA Healthplan of Louisiana, Inc. v. State of Louisiana, ex rel. Richard P. Ieyoub</u>, 883 F. Supp. 94 (M. D. La. 1995).

[19]<u>See</u> 29 U.S.C.S. § 1144(a).

[20]<u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 138, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990) (internal quotations and citations omitted).

[21]<u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 47, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987).

[22]<u>Shaw</u>, 463 U.S. at 96-97 (emphasis added).

[23]<u>See</u> <u>Rozzell v. Security Services, Inc.</u>, 38 F.3d 819, 821 (5th Cir. 1994) (citing <u>Pilot Life</u>, 481 U.S. 41).

[24]<u>See</u> <u>Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc.</u>, 793 F.2d 1456 (5th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1034, <u>and cert. denied</u>, 479 U.S. 1089 (1987).

fact that the Supreme Court has repeatedly held that ERISA preempts "state laws that mandat[e] employee benefit structures or their administration."[25]

Nevertheless, ERISA preemption is not without limits. The Supreme Court has cautioned that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."[26] A unanimous Supreme Court has recently held in this regard that ERISA does not preempt state laws that have "only an indirect economic effect on the relative costs of various health insurance packages" available to ERISA-qualified plans.[27]

ERISA itself contains provisions which limit the scope of preemption.[28] For the purposes of the instant appeal, it is relevant that under § 514(b)(2)(A) of ERISA, preemption stops short of "any law of any State which regulates insurance."[29]

2.   Application of § 514(a) to the Instant Appeal

As discussed above, § 514(a) of ERISA provides for the preemption of state laws that either refer to or have a connection

---

[25]New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 115 S. Ct. 1671, 1678, 131 L. Ed. 2d 695 (1995) [hereinafter Travelers] (citing Shaw, 463 U.S. 85; FMC Corp. v. Holliday, 498 U.S. 52, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990); Alessi v. Raybestos-Manhattan, Inc., 451 US. 504, 101 S. Ct. 1895, 68 L. Ed. 2d 402 (1981)).

[26]Shaw, 403 U.S. at 100 n.21.

[27]Travelers, 115 S. Ct. at 1680 (discussing New York statute requiring hospitals to collect surcharges from patients covered by commercial insurers but not from patients insured by a Blue Cross/Blue Shield plan) (emphasis added).

[28]See 29 U.S.C.S. § 1144(b) (Law. Co-op 1990 & Supp. 1995).

[29]See 29 U.S.C. § 1144(b)(2)(A); see also Travelers, 115 S. Ct. at 1675.

with an ERISA-qualified plan.[30]  The Any Willing Provider statute qualifies for preemption on both counts.  First, it refers to ERISA-qualified plans.  More specifically, the statute requires that all licensed providers "who agre[e] to the terms and conditions of the preferred provider contract" must be accepted as providers in the PPO.[31]  Under the terms of the Act, a preferred provider contract constitutes an agreement "between a provider or providers and <u>a group purchaser or purchasers</u> to provide for alternative rates of payment specified in advance for a defined period of time."[32]  The Act specifically provides that group purchasers may include entities, such as "Taft-Hartley trusts or employers who establish or participate in self funded trusts or programs,"[33] which "contract [with health care providers] for the benefit of their . . . employees."[34]  Given that these enumerated entities constitute ERISA-qualified plans,[35] the Act, and through

---

[30]<u>See, e.g.</u>, <u>Travelers</u>, 115 S. Ct. at 1677; <u>Dist. of Columbia v. Greater Washington Bd of Trade</u>, 506 U.S. 125, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992); <u>Shaw</u>, 463 U.S. at 96-97.

[31]<u>See</u> LA. REV. STAT. ANN. § 40:2202(5)(c).

[32]<u>See</u> LA. REV. STAT. ANN. § 40:2202(5)(a) (emphasis added).

[33]<u>See</u> LA. REV. STAT. ANN. § 40:2202(3)(a).

[34]<u>See id.</u> ("'Group purchaser' may include:  . . . Entities which contract for the benefit of their insured [sic], <u>employees</u>, or members such as insurers, self-funded organizations, <u>Taft-Hartley trusts</u>, or <u>employers who establish or participate in self funded trusts or programs.</u>") (emphasis added).  We note that the statute would be considerably clearer if it had been drafted as follows:  "'Group purchaser' may include:  . . . Entities (such as insurers, self-funded organizations, Taft-Hartley trusts, or employers who establish or participate in self funded trusts or programs) which contract for the benefit of their insured [sic], employees, or members."

[35]<u>See</u> 29 U.S.C.S. § 1002(1)(A) (Law. Co-op 1992) (defining an employee welfare benefit plan as "any plan, fund, or program which . . . is . . . maintained by an employer . . . to the extent that

9

it the Any Willing Provider statute,[36] expressly refers to ERISA plans.

Moreover, the statute "relates to" ERISA plans in the sense that it is connected with such plans. The Supreme Court has emphasized that preemption is appropriate on this ground when statutes "mandat[e] employee benefit structures or their administration."[37] In the instant case, ERISA plans that choose to offer coverage by PPOs are limited by the statute to using PPOs of a certain structure — i.e., a structure that includes every willing, licensed provider. Stated another way, the statute prohibits those ERISA plans which elect to use PPOs from selecting a PPO that does not include any willing, licensed provider. As such, the statute connects with ERISA plans.

Neither is it of any consequence that plans might not choose to offer coverage by PPOs: It is sufficient for preemption purposes that the statute eliminates the choice of one method of

_____

such plan, fund, or program . . . is maintained for the purpose of providing for its participants . . . medical . . . care or benefits . . . . ."); see also 29 U.S.C.S. § 1002(1)(B) (Law. Co-op 1992) (including in the definition of employee welfare benefit plans programs providing "any benefit described in section 302(c) of the Labor Management Relations Act"). The referenced section of the Labor Management Relations Act provides for the establishment of Taft-Hartley trusts. See 29 U.S.C.S. § 186(c) (Law. Co-op 1993); Lickteig v. Business Men's Assurance Co. of Am., 61 F.3d 579, 581 n.3 (8th Cir. 1995).

[36]We recognize that in holding that the statute refers to ERISA plans, we rely heavily on language that is found not in the text of the statute itself, but rather in the surrounding provisions of the Act that define the key terms of the statute. As these provisions are indispensable to the interpretation and application of the statute, we cannot separate the references to ERISA in those provisions from such references in the statute itself.

[37]See Travelers, 115 S. Ct. at 1678.

10

structuring benefits.[38]  The fact that neither CIGNA nor CGLIC is itself an ERISA plan is likewise inconsequential:  By denying insurers, employers, and HMOs the right to structure their benefits in a particular manner, the statute is effectively requiring ERISA plans to purchase benefits of a particular structure when they contract with organizations like CIGNA and CGLIC.[39]  In that regard, the statute "bears indirectly but substantially on all insured plans,"[40] and is accordingly preempted by ERISA.[41]

Ieyoub and amici curiae[42] strenuously argue that this

---

[38]See, e.g., Alessi, 451 U.S. at 524 (discussing a state statute that banned pension benefit offsets based on workers compensation awards, and holding that the statute related to ERISA plans pursuant to § 514(a) because it "eliminate[d] one method for calculating . . . benefits . . . that is permitted by federal law"); see also FMC Corp., 498 U.S. at 60 (holding that statute related to ERISA plans pursuant to § 514(a) because it "prohibit[ed] plans from being structured in a manner requiring reimbursement in the event of a recovery from a third party").

[39]See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985) (holding that a statute "relates to" ERISA plans for the purposes of preemption if it "requires [the plans] to purchase the . . . benefits specified in the statute when they purchase a certain kind of common insurance policy.").

[40]See Metropolitan Life, 471 U.S. at 739.

[41]Cf. Stuart Circle Hosp. Corp. v. Aetna Health Management, 995 F.2d 500, 502 (4th Cir.) (holding that Virginia statute prohibiting insurance companies from unreasonably discriminating in establishing PPOs is covered by ERISA's preemption provision because it "restricts the ability of an insurance company to limit the choice of providers that otherwise would confine the participants of an employee benefit plan to those preferred by the insurer") (also holding that the statute was saved from preemption by ERISA's insurance savings clause), cert. denied, 114 S. Ct. 579 (1993); Blue Cross and Blue Shield of Atlanta v. Nielsen, No. CV-94-L-1265-S, 1996 U.S. Dist. LEXIS 1970 (Jan. 31, 1996) (holding that Alabama's equivalent of the Any Willing Provider statute is preempted by ERISA).

[42]A brief was filed in support of Ieyoub's position by the Louisiana State Medical Society and the Louisiana Dental

11

conclusion is barred by the Supreme Court's recent decision in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,[43] which was decided shortly after the district court issued its opinion in the instant case. In Travelers, the Court held that ERISA does not preempt a New York statute that requires hospitals to collect surcharges from patients covered by commercial insurers, but not from patients insured by Blue Cross & Blue Shield plans. The plaintiffs in Travelers argued that the New York statute was preempted by ERISA because it "make[s] the Blues more attractive (or less unattractive) as insurance alternatives and thus ha[s] an indirect economic effect on choices made by insurance buyers, including ERISA plans."[44] The Supreme Court disagreed, holding that statutes that have "only an indirect economic effect on the relative costs of various health insurance packages"[45] available to ERISA plans are not preempted by ERISA. The Court reasoned that "[a]n indirect economic influence . . . does not bind plan administrators to any particular choice."[46] The Court also emphasized the limited nature of its holding:

> [W]e do not hold today that ERISA preempts only direct regulation of ERISA plans, nor could we do that with fidelity to the views expressed in our prior opinions on the matter. We acknowledge that a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage . . . and that such a state law might indeed be preempted under § 514. But as we have shown, New York's surcharges do not fall into [that] category; they affect only indirectly the prices of insurance policies, a result no different from

---

Association acting as amici curiae.

[43]115 S. Ct. 1671.

[44]See id. at 1679 (emphasis added).

[45]Id. at 1680.

[46]Id.

12

myriad state laws in areas traditionally subject to local regulation . . . .[47]

Unlike the New York statute at issue in <u>Travelers</u>, Louisiana's Any Willing Provider statute specifically mandates that certain benefits available to ERISA plans must be constructed in a particular manner. In other words, the Louisiana statute does not merely raise the cost of the implicated benefits; it delineates their very structure. As such, the statute falls outside the purview of the limited <u>Travelers</u> holding: The Court there repeatedly recognized that ERISA preempts "state laws that mandat[e] employee benefit structures."[48] Accordingly, we hold that the <u>Travelers</u> decision leaves undisturbed our conclusion that Louisiana's Any Willing Provider statute is preempted by ERISA.

### 3. The Insurance Exception

Determining that the Louisiana statute "relates to" ERISA plans and is therefore covered by ERISA's broad preemption provision does not complete our inquiry. We must next consider whether the statute is nonetheless saved from preemption by one of the exceptions embodied in ERISA's savings clause. This clause provides that "nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates <u>insurance</u>, banking, or securities."[49] In <u>Metropolitan Life Insurance Co. v. Massachusetts</u>,[50] the Supreme Court delineated the requirements that a statute must meet to come within the insurance facet of the savings clause. As we have noted in prior opinions,

---

[47]<u>Id.</u> at 1683 (emphasis added) (citations omitted).

[48]<u>Id.</u> at 1678; <u>see also</u> <u>id.</u> at 1679 (distinguishing New York law from preempted laws on ground that it "does not bind plan administrators to any particular choice"); <u>id.</u> at 1681.

[49]29 U.S.C.S. § 1144(b)(2)(A) (emphasis added).

[50]471 U.S. 724.

13

the Court took a conjunctive two-step approach:

> First, the court determined whether the statute in question fitted the common sense definition of insurance regulation. Second, it looked at three factors: (1) Whether the practice (the statute) has the effect of spreading the policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. If the statute fitted the common sense definition of insurance regulation <u>and</u> the court answered "yes" to <u>each</u> of the questions in the three part test, then the statute fell within the savings clause exempting it from ERISA preemption.[51]

Thus, if a statute fails either to fit the common sense definition of insurance regulation or to satisfy any one element of the three-factor <u>Metropolitan Life</u> test, then the statute is not exempt from preemption by the ERISA insurance savings clause.[52]

When we begin to apply that test to Louisiana's Any Willing Provider Statute, we may start and finish with the third factor of the <u>Metropolitan Life</u> test: On its face, Louisiana's statute obviously is not "limited to entities within the insurance industry." Even though the statute lists insurers as one group covered by its terms, it also specifies, in a non-exclusive list, that it applies to "self-funded organizations, Taft-Hartley trusts, or employers who establish or participate in self funded trusts or programs,"[53] as well as "health care financiers, third party administrators, providers, or other intermediaries."[54] As the statute fails to meet the third factor of the <u>Metropolitan Life</u>

---

[51]<u>Tingle v. Pac. Mut. Ins. Co.</u>, 996 F.2d 105, 108 (5th Cir. 1993) (citations omitted) (emphasis added); <u>see also</u> <u>NGS Am., Inc. v. Barnes</u>, 998 F.2d 296, 299 (5th Cir. 1993).

[52]<u>See</u> <u>Tingle</u>, 996 F.2d at 108; <u>NGS Am.</u>, 998 F.2d at 299.

[53]LA. REV. STAT. ANN. 40:2202(3)(a).

[54]LA. REV. STAT. ANN. 40:2202(3)(b).

test,[55] we affirm the district court's holding that the statute is not saved from preemption by the insurance exception of § 514(b) of ERISA.

## III.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment declaring that ERISA preempts the Any Willing Provider Statute insofar as it relates to third party administrators and health care plans that provide services to ERISA-qualified benefit plans. We also affirm the court's grant of an injunction barring Ieyoub from enforcing the statute against CIGNA and CGLIC.

AFFIRMED.

---

[55]See Iron Workers Mid-South Pension Fund v. Terotechnology Corp., 891 F.2d 548 (5th Cir.), cert. denied, 497 U.S. 1924 (1990). As discussed above, having determined that the statute fails to meet one element of the Metropolitan Life test, we need not consider whether the statute meets the other elements.