WASHINGTON PHYSICIANS SERVICE ASSOCIATION; Medical Service Corporation Of Eastern Washington, A Health Care Service Contractor; Good Health Plan of Washington, a Health Maintenance Organization; Pacificare of Washington, a Health Care Service Contractor; Selectcare Health Plans, a Health Maintenance Organization; Qualmed Washington Health Plan, Inc., a Health Maintenance Organization; Kaiser Foundation Health Plan of the Northwest, a Health Maintenance Organization; Blue Cross and Blue Shield of Oregon, a Health Care Service Contractor; Group Health Cooperative of Puget Sound, a Health Maintenance Organization; Blue Cross of Washington and Alaska, a Health Care Service Contract; Pierce County Medical Bureau Inc., a Health Care Service Contractor; and King County Medical Blue Shield, a Health Care Service Contractor, Plaintiffs,

v.

Christine O. GREGOIRE, in her capacity as Attorney General for the State of Washington; and Deborah Senn, in her capacity as Insurance Commissioner of the State of Washington, Defendants.

No. C96–5850FDB.

United States District Court,
W.D. Washington,
At Tacoma.

May 2, 1997.

Order Denying Reconsideration
July 23, 1997.

Richard J. Birmingham, Lee Arthur Thorson, Birmingham Thorson & Barnett, Seattle, WA, for plaintiffs.

Sara J. Finlay, John G. Hennen, Atty. Gen. Office, Social & Health Services, Olympia, WA, William H. Song, Davies, Roberts & Reid, Seattle, WA, for defendants.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BURGESS, District Judge.

### INTRODUCTION

This matter comes before the Court on cross motions for summary judgment. Neither party argues that there exist material issues of fact requiring a trial.

Plaintiffs, a consortium of health care contractors and service providers, initiated the case by filing a complaint for declaratory and

injunctive relief on September 19, 1996. Defendants are Christine Gregoire, as Attorney General, and Deborah Senn, in her capacity as Insurance Commissioner of the State of Washington.

At issue is whether the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., preempts RCW 48.43.045, the Alternative Provider Statute and the State's interpretation of the Statute (the Act), or whether ERISA's insurance savings clause, 29 U.S.C. § 1144(a), (b)(2)(A), allows the State to enforce its recently enacted law which mandates the use of all state-certified health care providers by health carriers. The ultimate question is whether the State can require plaintiffs to provide for their subscribers the services of licensed alternative health care providers, including the services of chiropractors, acupuncturists and other non-traditional providers.

This Court holds that the Act is preempted by ERISA, and that the Act does not fall within the exemption provided by ERISA's "Savings Clause"; RCW 48.43.045 is therefore, not a valid exercise of the State's authority to regulate health service entities.

## LEGAL BACKGROUND

### ERISA Preemption

Congress enacted ERISA in order to establish basic uniform laws for employee benefit plans in specified areas. Earlier ERISA preemption cases held that in determining whether a federal statute preempts a state law, Congress' intent controls. *See FMC Corp. v. Holliday*, 498 U.S. 52, 56, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). "If the intent of Congress is clear, that is the end of the matter; for the court … must give effect to the unambiguously express intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Fearful of a patchwork of state and local regulatory requirements, Congress designed ERISA with a broad preemption provision at its core. *FMC Corp. v. Holliday*, 498 U.S. at 56, 111 S.Ct. at 407. Recently, however, the Supreme Court indicated that hence forward courts should decide whether ERISA preempts state law not by asking whether the language requires it or whether Congress intended it but by asking whether preemption makes sense as a matter of ERISA policy. *See New York State Conference of Blue Cross/Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

### The Insurance Savings Clause

Generally speaking, ERISA's preemption clause applies to all state laws that "relate to" employee welfare benefit plans governed by ERISA. However, not all regulations purporting to relate to employee welfare benefit plans are preempted. Congress carved out an exception, called the "savings clause," 29 U.S.C. § 1144(b)(2)(A), ERISA § 514(b)(2)(A), which exempts from preemption those laws that regulate insurance, banking or securities. This exception for insurance regulation is itself limited, however, by the provision that an employee welfare benefit plan may not "be deemed to be an insurance company or other insurer." *See* ERISA § 514(b)(2)(B), 29 U.S.C. § 1104(b)(2)(B).

### RCW 48.43.045

In 1995, the Washington State legislature enacted a statute that directs health carriers to make available all categories of state-licensed health care providers to their subscribers. The statute, RCW 48.43.045, reads in part:

> Every health plan delivered, issued for delivery, or renewed by a health carrier on or after January 1, 1996, shall … [p]ermit every category of health care provider to provide health services or care for conditions included in the basic health plan services.

Both parties agree the Act requires health carriers (health maintenance organizations, health care services contractors, etc.) to reimburse providers (doctors, dentists, etc.) for all types of licensed care, including alternative care. The parties disagree as to the validity of the Act. Plaintiffs contend that: 1) a health carrier's business is not in the nature of insurance and is, therefore, outside the realm of ERISA preemption; and 2) the Act is preempted under ERISA's so-called "relates to" doctrine. Defendants maintain

that because the law acts to spread the risk from policyholder to health carrier and satisfies the tests for inclusion under the insurance savings clause, it is not preempted.

## ANALYSIS

### I. ERISA Preemption—"Relate To" Test

■ Defendants argue that the Act regulates matters traditionally within the police powers of the state to assure the health and safety of the people of the state. Also, the plan regulates only the insurer not the benefit plan and it does not bind administrators to any particular choice, particularly with areas requiring uniformity, eligibility of claimants, making disbursements, monitoring funds availability, and record keeping. Defendants' argument lacks the force and logic of that presented by Plaintiffs.

There is ERISA preemption if the state law attempts to regulate: (i) the structure, (ii) the content, (iii) the method of administration, or (iv) plan requirements that vary from state to state. *Travelers,* 514 U.S. at 655–59, 115 S.Ct. at 1677–78. ERISA supersedes "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." *See* ERISA § 514(a), 29 U.S.C. § 1144(a). ERISA not only preempts state laws and regulations that are directed at employee benefit laws, but also those laws or regulations that have a "connection with" or a "reference to" such plans. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); and, *e.g., Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981).

The Act "relates to" benefit plans in several ways. The Act "relates to" the administration of employee benefit plans because it interferes with the plan administrators' discretion of whom to contract with and whom to pay. The Act "relates to" the structure of employee benefit plans because it prohibits ERISA plans from selecting an arrangement that does not cover every category of provider. *See, e.g., Blue Cross and Blue Shield of Alabama v. Peacock's Apothecary, Inc.,* 567 F.Supp. 1258, 1276 (N.D.Ala.1983)(interference with the structure of contractual relationships with participating pharmacies "relates to" plans). The Act "relates to" content because a health plan is required to cover provider services that it did not cover previously. *Accord CIGNA Healthplan of Louisiana, Inc. v. State of Louisiana,* 82 F.3d 642, 648 (5th Cir.1996)("any willing provider" statute "relates to" ERISA); *Stuart Circle Hospital Corp. v. Aetna Health Management,* 995 F.2d 500, 502 (4th Cir.1993) (statute that restricts the ability of an insurance company to limit choice of providers "relates to" an employee benefit plan); *Blue Cross and Blue Shield of Alabama v. Nielsen,* 917 F.Supp. 1532, 1536–37(N.D.Ala.1996)(statute requiring coverage of any licensed dentist and prohibiting payor's review of quality or utilization "related to" employee benefit plan).

There is also the risk of conflicting and inconsistent state and local regulation, as, for example, an Oregon employer who contracts with a health carrier in Washington to cover employees in Washington would have to comply with the Act even if there were no such mandate for the employer in Oregon.

The "relate to" test of ERISA preemption has been satisfied, and the State Alternative Provider Mandate Statute and State Interpretations are preempted unless saved from preemption as a law "regulating insurance."

### II. ERISA Preemption—The Savings Clause

■ In determining whether the Act comes within the Savings Clause as regulating insurance, a two-step analysis is employed as set forth in *Metropolitan Life Insurance Company v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The first step is a "common sense" view analyzing whether the law at issue is specifically directed at the insurance industry, and thus, logically falls within the scope of the "regulates insurance" language of the Savings Clause. Next, a court must analyze whether the law regulates the "business of insurance" as described by the McCarran–Ferguson Act. A state law must be treated as regulating insurance under both the "common sense view" and all three parts of the McCarran–Ferguson analysis in order to be

saved from preemption. *CIGNA Healthplan of Louisiana, Inc. v. State of Louisiana,* 82 F.3d 642 (5th Cir.1996); *Anschultz v. Connecticut General Life Insurance Company,* 850 F.2d 1467, 1468 (11th Cir.1988).

### A. The Common Sense View

■ Defendants argue that the Act here regulates the terms of insurance by mandating providers within service categories. In order to "regulate insurance," however, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. *Pilot Life v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The Alternative Provider Mandate Statute is directed at "Health Carriers" and "Health Plans," each of which is qualitatively different and substantially broader than the insurance industry. The Act is not limited to policies, contracts, or agreements to "indemnify" or "pay" for health services as would be the case in insurance products, but also extends to contracts or arrangements which merely "provide" or "arrange" for health care service.

The exclusion of "employer-sponsored self-funded Health Plans" from the Act's definition of "Health Plan" does not operate to avoid ERISA preemption. There are other plans that the Act would regulate: certain ERISA plans that may not be regulated by virtue of the "deemer clause," 29 U.S.C. § 1144(b)(2)(B), and governmental or church plans administered by a health carrier, which may not be ERISA plans, but which are clearly outside the insurance industry. The Act, is directed at "Health Carriers," which are defined in RCW 48.43.005(8) as "a disability insurer regulated under Chapter 48.20 or 48.21 RCW, a health services contractor as defined in RCW 48.44.010, or a health maintenance organization as defined in RCW 48.46.020." Thus, on its face, the Alternative Provider Mandate Statute is not directed simply at insurers, but also at HMOs. HMOs are not insurers, as Insurance is defined as "a contract by which one party, for a consideration ... promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest." *Couch on Insurance, 2d,* § 1:2

(1984). RCW 48.01.040 defines "insurance" as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." An HMO is not an insurer but a "health care delivery system"; the purpose of an HMO is described in the HMO Act:

> The Legislature declares that the establishment of qualified prepaid group and individual practice health care delivery systems should be encouraged in order to provide all citizens of the state with the freedom of choice between competitive, alternative health care delivery systems necessary to realize their right to health.

RCW 48.46.010. While insurers indemnify health care, HMOs provide health care services. HMOs' activities in providing health care services are not subject to insurance laws:

> Any health maintenance organization may enter into agreements with or for the benefit of persons or groups of persons which require prepayment for health care services by or for such persons in consideration of the health maintenance organization *providing health care services* to such persons. *Such activity is not subject to the laws relating to insurance if the health care services are rendered directly by the health maintenance organizations or by any provider which has a contract or other arrangement with the health maintenance organization to render health services to enrolled participants.*

RCW 48.46.060(1)(emphasis added).

The above discussion reveals that the Act is not specifically directed at the insurance industry and thus fails the "common sense" view of the term "regulates insurance." This alone would be enough to remove the Act and its interpretations from Savings Clause protection leaving them preempted by ERISA Section 514, 29 U.S.C. § 1144. But assuming, *arguendo,* that the Act passes the "common sense" test, the McCarran–Ferguson "business of insurance" test must be satisfied.

### B. The McCarran–Ferguson Criteria

■ The McCarran–Ferguson "business of insurance" test provides three criteria for determining whether a statute "regulates in-

surance." These factors are set forth in *Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553 as follows:

> (F)irst whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited solely to entities within the insurance industry.

Each element of the McCarran–Ferguson criteria must be satisfied before a statute may be considered to regulate insurance.

### 1. *The Act and State Interpretations Do Not Spread Risk*

■ The Act and State Interpretations do not mandate the coverage of any additional conditions by any affected plan or contract. "The risk spreading principle concerns the nature of the coverage of the policy—in other words, the risks of injury that the insurance company will bear for the insured." *Smith v. Jefferson Pilot Life Insurance Co.,* 14 F.3d 562, 569 (11th Cir.1994), *cert. denied,* 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994). The contract between the carrier and the subscriber enumerates what conditions will be covered by the plan. For a subscriber with a covered condition, the shifting of risk occurs at the time such contract is entered into—the condition is either covered or not covered. On the other hand, the arrangements that a carrier makes with a particular category of provider does not shift the risk between the carrier and the subscriber any more than a decision to include or exclude a particular Dr. Smith or Dr. Jones in a preferred panel shifts the risk. In *Group Life and Health Insurance Company v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the issue was whether contracts between the insurer and participating pharmacies constituted the business of insurance such that the contracts were exempted from federal antitrust scrutiny. The court, applying the three criteria in the McCarran–Ferguson "business of insurance" test, concluded that the pharmacy agreements were "merely arrangements for the purchase of goods and services" by the "insurer," and thus, outside the scope of the

"business of insurance." *Id.* at 214, 99 S.Ct. at 1074. As in the *Royal Drug* case, the Act does not affect the allocation of risk or cost as between the insurer and the insured, but rather, imposes restrictions on the freedom of the carrier to purchase provider services. Moreover, in those situations where a health carrier merely performs administrative functions for self-funded union plans or self-funded plans of trade associations or other groups, there can be no risk shifting.

Defendants argue that there is risk shifting because the entities covered by the Act bear the risk that an insured, a policyholder, will secure treatment from alternative providers and be reimbursed rather than having to pay for it as before. Defendants rely on *Blue Cross and Blue Shield of Kansas City v. Bell,* 798 F.2d 1331 (10th Cir.1986). That case is not compelling, however, and has been criticized. In *Blue Cross and Blue Shield of Alabama v. Nielsen,* 917 F.Supp. 1532, 1542 (N.D.Ala.1996), the Court stated:

> In discussing the mandated provider section of the statute, the *Bell* court's analysis turned on its characterization of this portion of the statute as a "freedom of choice" law. The court concluded, without citing any authority or meaningful discussion, that the mandated provider statute met the first McCarran–Ferguson criterion—risk spreading—because "[i]mplicit in the [scope of] coverage ... is the insured's choice of a deliverer of the care." *Bell,* 798 F.2d at 1335.

*Nielsen* presents a cogent analysis of the difference between mandatory provider laws and mandated benefits laws:

> There is however, a principled difference between mandated benefits laws and mandated provider laws. The Acts directly benefit those providers who avail themselves of the rights afforded by the Acts. The relationship between the provider and the patient is separate from the relationship with the provider and the payor. The Acts affect who gets paid, and that determination certainly has an effect, albeit an incidental one, on the subscriber. The Acts are not an integral part of the contractual relationship between Blue Cross and the patient/subscriber since the Acts do not affect the substantive coverage terms of the contracts defining the subscriber/payor relationship.

*Nielsen,* 917 F.Supp. at 1541–42. The *Nielsen* Court concluded:

> Under the first McCarran–Ferguson criterion, *the choice of a health care provider has nothing to do with spreading the risk of coverage.* As explained by the Eleventh Circuit in *Jefferson Pilot,* spreading the risk entails "the risks of injury that the insurance company will bear for the insured." *Jefferson Pilot,* 14 F.3d at 569 (citation omitted). Taking the court's example in *Bell,* coverage for a back injury, *spreading the risk entails the amount of coverage that the insurer will bear for treatment of a particular injury or procedure—not who will perform the treatment.*

*Id at* 1542 (emphasis added).

More important, the Ninth Circuit has addressed the issue. In *Hahn v. Oregon Physicians Service,* 689 F.2d 840, 843 (9th Cir. 1982) the Court relied on *Royal Drug* and held it was not established "that there are any *bona fide* risk-related reasons for an insurer to distinguish between the services of M.D.'s and podiatrists, much less that such a distinction is at the core of what is commonly understood to be the 'business of insurance'."

The more compelling argument is that the Act herein does not shift risk and that the First element of the McCarran–Ferguson criteria is not satisfied.

### 2. The Act Is Not Integral To The Insurer/Insured Relationship

The Act relates to the terms of the relationship between the carrier and the providers, not the relationship between the carrier and its subscribers. Defendants argue that the Act affects the benefits that policyholders may enjoy. While there may be an indirect effect, this is insufficient to satisfy this element—it must be integral, and a contract between a carrier and a provider is not integral to carrier/subscriber relationship. Stated differently, an insured's right to coverage of a certain condition is integral to the insurer/insured relationship as it involves the risk that the insurer bears for the insured. The Act, however, affects the administrative function of who gets paid and under what terms must they render services; these are issues of how the plan chooses to provide care for a condition for which coverage has been prom-

ised. *See Nielsen,* 917 F.Supp. 1532 (1996), and *Hahn,* 689 F.2d at 843.

### 3. The Act is Not Directed Solely At The Insurance Industry

It is not enough that the Act is directed at the insurance industry and possible other parties; it must be directed *solely* at the insurance industry. Because the Act reaches beyond insurers to include HMOs and others, the Act fails this element of the McCarran–Ferguson test.

While the status of an HMO is a gray area because it possesses certain characteristics of insurance and health care, it appears that its primary mission is health care as opposed to insurance. As earlier discussed, HMOs are not "insurers" under the Revised Code of Washington, nor are they subject to insurance laws where the HMO renders the health care services or providers under contract to the HMO render the services. While there are clearly some aspects of health care financing by HMOs, it seems more logical to conclude that these entities are primarily involved in the health care industry, not the insurance industry. Furthermore, because the definitions of "Health Plans" includes uninsured ERISA plans such as self-funded Taft–Hartley plans and multiple employer plans sponsored, for example, by trade associations, the Act obviously extends beyond the insurance industry to uninsured plans. These plans may not be directly or indirectly regulated by the state. *Metropolitan Life Insurance Company v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

The Act extends to entities beyond the insurance industry and, therefore, clearly fails the third McCarran–Ferguson criterion.

### CONCLUSION

The Act "relates to" ERISA plans because the law regulates the structure, the content, the method of administration, and the uniform requirements of employee benefit plans. The Act is not saved from preemption because it fails to pass each of the requirements of the "savings" clause. It fails the common sense test because it is not directed

solely at the insurance industry but at health carriers and health plans; it does not transfer risk, but governs the purchase of goods and services; it is not an integral part of the relationship between insurer and insured, but governs relationships with providers; and it is not limited to entities within the insurance industry.

The Alternative Provider Mandate Statute and State Interpretations are, therefore, preempted.

Accordingly, and concluding that oral argument is unnecessary, it is hereby

ORDERED:

(1) Plaintiffs' Motion for Summary Judgment is GRANTED, and Defendants and their agents and employees are enjoined from enforcing the Statute and State Interpretations;

(2) Defendant's Motion for Summary Judgment is DENIED;

(3) The parties' respective motions to file over length briefs are GRANTED;

(4) The parties' respective motions to strike and MOOT, as neither of the subject material were of significance to the analysis and decision herein.

ORDER ON DEFENDANTS' MOTION
FOR RECONSIDERATION

July 23, 1997.

This matter comes before the Court upon Defendants' Motion For Reconsideration and Clarification of Terms of Order of May 2, 1997. Plaintiffs oppose this motion with one exception.

The Court has considered the arguments of the parties in reviewing its May 2, 1997 order and is persuaded that reconsideration must be denied for the reasons stated in Plaintiffs' opposition. The Court also notes that Plaintiffs concede that RCW 48.43.045(2) is severable and may be enforced regardless of RCW 48.43.045(1) having been held by this Court to be preempted.

Accordingly, it is hereby

ORDERED:

(1) Defendants' Motion For Reconsideration and Clarification of Terms of Order of May 2, 1997 is DENIED, except that

(2) RCW 48.43.045(2) is severable and may be enforced by the Defendants.