F I L E D
United States Court of Appeals
Tenth Circuit

APR 29 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

HOC H. DANG,

       Plaintiff-Appellant,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

       Defendant-Appellee.

No. 98-6122

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-1452)

_____

Submitted on the briefs:

Glen Mullins, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Charles E. Geister III, Phillip G. Whaley of Geister & Whaley, Oklahoma City,
Oklahoma, for Defendant-Appellee.

_____

Before **ANDERSON** , **KELLY** , and **LUCERO** , Circuit Judges.

_____

**LUCERO** , Circuit Judge.

_____

Hoc H. Dang, a former employee of Ingram Industries Inc., brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, seeking to recover benefits pursuant to his former employer's long-term disability plan. The United States District Court for the Western District of Oklahoma granted judgment in favor of defendant UNUM Life Insurance Company of America (UNUM) on the ground that Dang's claim for benefits under UNUM's long-term disability policy was untimely under the notice and proof of claim provisions of the policy. Dang appeals. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse and remand. [1]

## I. Background

UNUM issued a long term disability insurance policy to Dang's former employer on August 1, 1988. Dang had been employed by Ingram Cactus Company, an affiliate of Ingram Industries Inc., since April 14, 1980. On November 16, 1994, Dang suffered a work-related injury to his neck and arm requiring surgery. Except for a few weeks in December 1995, Dang did not return to work. In November 1996, Dang's employer submitted a claim for long

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). Therefore, appellee's request for oral argument is denied, and the case is ordered submitted without oral argument.

term disability benefits to UNUM on Dang's behalf. UNUM denied the claim because the application had been received outside the notice time limits of the policy.

Dang filed this ERISA action in federal district court alleging that UNUM incorrectly refused to pay him benefits due under the policy. The district court granted UNUM's motion for judgment. On appeal, Dang argues that "[t]he 'notice-prejudice rule,' which is followed in the majority of jurisdictions, should be applied to this action as a principle of federal common law." The "notice-prejudice rule" to which Dang refers, provides, with some minor state-to-state variations, that an insurance company may not avoid liability on the basis of the insured's filing of untimely notice and proof of claim without a showing of actual prejudice by the delay.

The policy provision invoked by UNUM to deny Dang benefits reads:

F. NOTICE AND PROOF OF CLAIM

1. Notice

a. Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.

　　　. . . .

2. Proof

a. Proof of claim must be given to the Company. This must be done no later than 90 days after the end of the elimination period.

b. If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible. But proof of claim may not be given later than one year after the time proof is otherwise required.

Appellant's App. at 227. The policy defines the elimination period as the first 150 days of disability during which no benefits are paid. Therefore, it appears that Dang had, at the most, one year plus 240 days in which to file his claim. His injury occurred on November 16, 1994, and his claim was not submitted until November 13, 1996, almost two years after the onset of his disability. It is undisputed that his claim was submitted outside the policy provision period.

Our answer to the question of whether a notice-prejudice rule can be applied to Dang's claim involves a delving look into Oklahoma state law, ERISA preemption, and the propriety of creating and applying federal common law in ERISA cases. We will address each of these in turn.

## II.  Discussion

### A.  Standard of Review

We review the district court's decisions on questions of law in this case de novo. See EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996). Interpretation of the plan and preemption issues under ERISA also are reviewed

de novo.[2]  See Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996);

Airparts Co. v. Custom Benefit Servs. of Austin, Inc., 28 F.3d 1062, 1064

(10th Cir. 1994).

## B.  Oklahoma State Law

Relying on Cisneros v. UNUM Life Insurance Co. of America, 134 F.3d

939 (9th Cir. 1998), petition for cert. filed, 66 U.S.L.W. 3773 (U.S. May 20,

1998) (No. 97-18), Dang asks this court to apply California's notice-prejudice

rule to his claim.[3]  Under similar circumstances to those presented here, the

Cisneros court held that California's notice-prejudice rule was not preempted by

ERISA and remanded the plaintiff's claim for a determination of prejudice.  See

id. at 948.  Although we agree with the Ninth Circuit's decision in Cisneros,

Oklahoma also has a notice-prejudice rule obviating our need to address Dang's

invitation to adopt California law.

---

[2]  We note that the parties in this case disagreed as to the standard of review to be applied by the district court in reviewing Dang's claim.  Following briefing on the issue, the district court determined that it need not decide the issue because Dang's challenge to UNUM's denial of benefits could not be victorious under any standard of review.  Because we are without benefit of the district court's analysis on this question, we leave the issue to the district court's purview on remand, thereby providing this court with a basis for future review of the issue if necessary.

[3]  "California's 'notice-prejudice' rule prevents an insurance company from avoiding liability on the basis of untimely notice or submission of proof unless the company proves it has been substantially prejudiced by the delay."  Cisneros , 134 F.3d at 944.

In Dixon v. State Mutual Insurance Co., 126 P. 794 (Okla. 1912), the Oklahoma Supreme Court considered the refusal of the defendant insurance company to cover the insured's fire loss due to the insured's late notice of claim. The court held that "[u]nless time was made of the essence of the contract, the [insurance] company cannot escape liability for the loss, except it appears that they were injured by the failure of the insured to comply with the letter of the contract as to time for giving notice and making proof." Id. at 795. As stated, this rule mirror's the California version. The Dixon court, however, added an additional element to the Oklahoma version of the rule, holding that the insured's failure to provide proof of loss within the policy limits did not operate to forfeit his claim because, although the policy notice provisions provided time limits for furnishing notice and proof of claim, it did not impose a forfeiture for failure to comply with the time limits. See id. at 796; see also Continental Cas. Co. v. Beaty, 455 P.2d 684, 688 (Okla. 1969) ("[U]nless failure to comply with the provision for notice expressly is made a ground of forfeiture the insurer cannot avoid liability, except for prejudice resulting from insured's failure to comply with the letter of the contract concerning notice and proof of loss.").

This court, in Federal Deposit Insurance Corp. v. Kansas Bankers Surety Co., 963 F.2d 289 (10th Cir. 1992), considered the FDIC's appeal of the district court's judgment in favor of the defendant surety company based on the failure

of several failed banks to give timely notice of their claims. Applying Oklahoma law, this court determined that, because the parties had made their intent to make time of the essence clear in the contract and had fully set forth the consequences of untimely notice, the surety company did not need to show prejudice, and the claims of the FDIC were correctly denied. See id. at 294.

In denying Dang's request to apply the California notice-prejudice rule as federal common law, the district court noted that "Tennessee, the 'governing jurisdiction' in this case, has not adopted the 'notice-prejudice' rule." Appellant's App. at 335 (footnote omitted). In a footnote, the court stated that, even if Oklahoma law was applicable, Dang would not be entitled to benefits because "[n]o prejudice is required if the relevant policy provides for forfeiture of benefits as a result of an untimely claim." Id. at 335 n.4 (citing Eastland Mortgage Co. v. Verex Assurance, Inc., Nos. 91-6368, 92-6045, 1992 WL 339068, at **3 (10th Cir. Nov. 17, 1992) (unpublished order and judgment)). We determine that both of the court's observations are incorrect in this context.

The title page of the UNUM policy refers to Tennessee as the "Governing Jurisdiction." Appellant's App. at 203. The policy does not, however, elaborate any further on this reference or include a choice of law provision in the event of litigation. Consequently, we determine that the district court's cursory reference

to Tennessee as the "Governing Jurisdiction" does not serve to delineate Tennessee as the choice of law forum in this matter.

A federal court adjudicating state law claims must apply the forum state's choice of law principles. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Oklahoma law, "a contract is to be interpreted according to the law and usage of the place where it is to be performed, or if it does not indicate a place of performance, according to the law of the place it was made." Devery Implement Co. v. J.I. Case Co., 944 F.2d 724, 727 (10th Cir. 1991) (further quotation omitted). Although not specifically stated in UNUM's policy, Oklahoma as the intended location of performance was apparent from the terms of the contract. See id. We therefore conclude that Oklahoma law governs.

The district court's alternate finding that Dang would not be entitled to benefits under Oklahoma law is based on an incorrect reading of the policy. It is clear that the notice provisions in UNUM's policy express a definite time limit for compliance. Contrary to the district court's premise, however, the provision fails to impose forfeiture of benefits or other adverse consequence for an insured's failure to comply with the time limits.[4] See Continental Casualty, 455 P.2d at 688

---

[4] We note that UNUM asserts on appeal that "[t]he Plan and Policy at issue here unambiguously required forfeiture of Plaintiff's benefits due to his untimely claim." Appellee's Br. at 24. UNUM does not, however, provide us with any cite to the record where we could find this unambiguous forfeiture

(continued...)

(holding that unless failure timely to file notice "<u>expressly is made a ground of forfeiture</u>," the insurer cannot avoid liability absent a showing of prejudice) (emphasis added).  Therefore, we conclude that in light of the lack of forfeiture language in the policy, UNUM cannot deny Dang's application for benefits based on late notice absent a showing of prejudice.  This, however, does not end our inquiry.  It must now be determined whether Oklahoma's notice-prejudice law is preempted by ERISA.

## C.  Preemption

ERISA's preemption clause, 29 U.S.C. § 1144(a), provides that ERISA preempts all state laws insofar as they "relate to any employee benefits plan." There is no dispute that Dang's cause of action relates to a employee benefit plan, and therefore, falls under ERISA's broad preemption clause.  ERISA's savings clause, § 1144(b)(2)(A), however, excepts from preemption state laws that "regulate[] insurance."  In <u>Pilot Life Insurance Co. v. Dedeaux</u>, 481 U.S. 41, 50 (1987), the Supreme Court stated that "[a] common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law

---

[4](...continued)
requirement.  Furthermore, we found no such requirement in the course of our independent review.

must not just have an impact on the insurance industry, but must be specifically directed toward that industry."

The Pilot Life Court then applied the case law interpreting the phrase "business of insurance" in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. See Pilot Life, 481 U.S. at 48-49; see also Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 742-43 (1985). Under the McCarran-Ferguson Act, three criteria are relevant to a determination of whether a practice is the "business of insurance:" "'*[F]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry.'" Id. at 743 (quoting Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982)).

Finally, the Pilot Life Court examined the legislative intent behind ERISA's civil enforcement provisions. Noting that "'the question whether a certain state action is preempted by federal law is one of congressional intent,'" 481 U.S. at 45, the Court determined that the legislature's inclusion of certain remedies and exclusion of others would be undermined if litigants were free to obtain relief under state law, see id. at 54 (the legislative history of ERISA's enforcement provisions confirms that "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied

-10-

in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive").  Applying the "common sense" view, the McCarran-Ferguson Act criteria, and congressional intent, the Pilot Life Court then concluded that Mississippi's law of bad faith, although "identified" with the insurance industry, was rooted in the state's tort and contract law and was therefore, preempted.  Id. at 50-51.

In Cisneros, the Ninth Circuit held that "the notice-prejudice rule dictates the terms of the relationship between the insurer and insured and so seems, as a matter of common sense, to 'regulate insurance.'"  134 F.3d at 945.  Further, the court held that the notice-prejudice rule was "directed specifically at the insurance industry and is applicable only to insurance contracts," thus satisfying two of the McCarran-Ferguson Act factors.  Id.  With regard to the third factor, the court noted that the rule "may not have the effect of transferring or spreading the policyholder's risk."  Id.  In rejecting the Fifth Circuit's holding that all three McCarran-Ferguson factors must be satisfied, see CIGNA Healthplan of Louisiana, Inc. v. Louisiana ex rel. Ieyoub, 82 F.3d 642, 650 (5th Cir. 1996), the Cisneros court concluded that "the McCarran-Ferguson factors are simply relevant considerations or guideposts, not separate essential elements of a three-part test that must each be satisfied for a law to escape preemption."  134 F.3d at 946; see also Metropolitan Life, 471 U.S. at 743 (describing the

McCarran-Ferguson factors only as "relevant" criteria); Union Labor Life Ins. Co., 458 U.S. at 129 (noting that "none of [the McCarran-Ferguson factors] is necessarily determinative").

It is clear that Oklahoma's notice-prejudice rule regulates the relationship between the insurer and the insured by defining the circumstances under which an insurer can avoid liability in the event of an insured's late notice of claim. See Metropolitan Life, 471 U.S. at 743. It is equally clear that, as formulated and applied in Oklahoma case law, the notice-prejudice rule is specifically directed toward the insurance industry and its related entities.[5] See Dixon, 126 P. 794; Continental Cas. Co., 455 P.2d 684.

Finally, we agree with the Cisneros court's holding that the fact that the notice-prejudice rule does not overtly effect the transfer or spread of a policyholder's risk does not defeat a finding of no preemption. See Metropolitan Life, 471 U.S. at 743 (noting that McCarran-Ferguson Act factors are only "relevant" to a determination of whether a practice can be found to be the "business of insurance"); but see CIGNA Healthplan, 82 F.3d at 650 (holding that

---

[5] We note that under Oklahoma contract law, the parties to a contract can make time of the essence if that intent is clear from the terms of the contract. See Dillard v. Caeser, 243 P.2d 356, 358 (Okla. 1952). We do not believe, however, that this rule of contract law undermines our determination that the notice-prejudice rule, as defined and applied in Oklahoma case law, is exclusively directed at the insurance industry.

-12-

if the state law at issue "fails either to fit the common sense definition of insurance regulation or to satisfy *any one element* of the three-factor <u>Metropolitan Life</u> test, then the [law] is not exempt from preemption by the ERISA insurance savings clause") (emphasis added). Therefore, coupling the McCarran-Ferguson Act factors with the common sense view that the rule is "specifically directed toward [the insurance] industry," <u>Pilot Life</u>, 481 U.S. at 50, we conclude that Oklahoma's notice-prejudice rule falls under ERISA's saving clause as a rule that regulates insurance, and is not preempted.[6] <u>See</u> 29 U.S.C. § 1144(b)(2)(A).

## D. Federal Common Law

Lastly, Dang urges this court to adopt the notice-prejudice rule as federal common law. "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64 (1987). In these circumstances, judge-made federal common law, rather than varying state law, should govern. <u>See</u> 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 2d § 3563, at 60 (1984). "[T]he weight of authority supports the application of federal common law to ERISA disputes."

---

[6] The Supreme Court's very recent decision in *UNUM Life Insurance Co. v. Ward*, No. 97-1868, 1999 WL 224560 (U.S. April 20, 1999), is in accord with our opinion here.

RTC v. Financial Insts. Retirement Fund, 71 F.3d 1553, 1556 (10th Cir. 1995) (citing relevant cases).

While acknowledging that it is permissible to formulate federal common law based on Oklahoma state law, to do so in this case is bound to create troublesome inconsistencies. Therefore, because of our decision here that Oklahoma's notice-prejudice rule is not preempted, we decline Dang's invitation to transform this rule into federal common law.

### III. Conclusion

For the reasons stated above, we hold that Oklahoma's notice-prejudice rule "regulates insurance," is not preempted, and is, therefore, applicable to Dang's claim. The matter is therefore REVERSED, and the case is REMANDED to the district court for further proceedings consistent with this opinion.